Opinion by
Mr. Justice Hall.
The parties appear here in the same order as in the trial court, and will be referred to as they there appeared.
Plaintiff seeks reversal of a judgment entered on the verdict of a jury which found for defendant in an action for damages for injuries sustained by plaintiff when a barrel being loaded onto plaintiff’s truck on defendant’s premises in Brighton, Colorado, shifted and injured plaintiff’s hand.
From the record it appears that the plaintiff operated a wholesale food-distributing business in Boulder. He had been a customer of defendant for more than eight years. About twice each month he made a trip to defendant’s Brighton plant to pick up merchandise and in nearly every instance purchased one or more 435-pound barrel of pickles.
At the time plaintiff was injured one Adam Kreutzer, hereinafter referred to as “Adam,” was the foreman of defendant’s pickle department.
Usually when plaintiff came for merchandise, including pickles, some of the employees loaded the pickles on his truck as an accommodation.
On the occasion in question plaintiff, who on previous occasions had assisted in doing the loading, volunteered to assist Adam who occasionally assisted in this work.
The only substantial dispute is as to the circumstances immediately preceding the happening of the accident resulting in plaintiff’s injuries. Plaintiff had backed up his panel truck to defendant’s loading dock and ordered three barrels of pickles. The normal loading procedure was to roll the barrel on its side from the plant to the rear of the truck, then to tip the barrel upright onto the truck bed, from which point it was “chimed,” or rolled on the lower rim, to the front end of the truck. Plaintiff’s truck bed was three or four inches above the level *345 of the dock, and the upending of a barrel of this weight required the services of two men. The usual procedure after the barrel was tipped upright on the back end of the truck was for one of the men to enter the truck and pull the barrel toward him from the top, while the other remained on the dock and pushed the barrel farther onto the truck bed so that it might be chimed to the front portion of the truck.
Because the back doors and frames of plaintiff’s truck slanted forward and the head space inside the truck was restricted, the man inside was in a cramped position from which he could not use his maximum strength to pull the barrel toward him so as to balance it on its rim for chiming.
Plaintiff and Adam upended the barrel onto the back end of the truck, with a few inches of the bottom of the barrel extending over the back end thereof. Adam then stepped inside, plaintiff remaining on the dock to do the pushing at the proper time. The body of the barrel was about six inches from the left, or north side of the truck. Adam was standing just to the right of the barrel, intending to chime it on back from his right side. He tipped the barrel toward him in order to get it onto its rim, and plaintiff gave it a push with his right hand to put the barrel into a position where Adam would have sufficient head room to proceed with the operation. Plaintiff testified that with the barrel in this position, Adam said: “Let loose, I’ve got it,” while Adam testified that plaintiff was the one who said: “I’ve got it.” This is the only conflict in the testimony.
Adam then released his hold and the barrel returned to an upright position and mashed plaintiff’s right thumb against the left side of the rear portion of the truck. There is no explanation in the record as to why plaintiff did not jerk his hand away from its position on the barrel, instead of allowing it to be carried to the left and caught against the side of the truck and crushed at the only spot in the truck where it could have been caught *346 in this manner. Adam stated, “one inch one way or the other, and it couldn’t have happened.”
Plaintiff does not complain of the verdict of the jury, but alleges as error the action of the trial court (1) in instructing the jury on unavoidable accident and (2) an assumption of risk.
He contends that the record disclosed no evidence to support such instructions and that the instruction on unavoidable accident did not properly define the term. The instructions attacked were Nos. 10 and 11.
Instruction No. 10 relates to assumption of risk, and reads as follows:
“You are instructed that if you find that when entering upon the transaction with which the plaintiff was engaged with defendant at the time of the happening of the accident and if you find that the plaintiff knew the hazards thereof and the inherent risk incident thereto and had full knowledge of the methods to be used in the performance of said transaction and the danger thereof, then in such event the plaintiff shall be taken to have voluntarily assumed the risk and in such case you are instructed to bring in a verdict for the defendant.”
In the case of Boulder Valley Coal Co. v. Jernberg, 118 Colo. 486, 197 P. (2d) 155, the fact situation was very similar to the facts in the instant case. There the plaintiff was asked to assist in unloading coal from a chute. During the unloading, defendant’s employe jerked loose a large piece of coal which fell and injured plaintiff. The court reversed a judgment for plaintiff and the cause was remanded for retrial with more specific instructions as to the law relative to contributory negligence and assumption of risk. The testimony here covered facts which not only warranted but required the giving of an instruction on assumption of risk.
The instruction given here on unavoidable accident (Instruction No. 11) reads as follows:
“The jury is instructed that if you find from the evi *347 dence that the accident was unavoidable, then none of the parties is entitled to damages.
“An unavoidable accident is one happening suddenly and unexpectedly and without negligence on the part of anyone.
“In the event that you find that the accident was unavoidable, then you are instructed to bring in a verdict in favor of the defendant.”
In the case of Stephens v. Lung, 133 Colo. 560, 298 P. (2d) 960, an automobile collision case, an instruction, reading as follows, was given over objection:
“The jury is instructed that if you find from the evidence that the accident was unavoidable so far as the parties to this litigation are concerned, then your verdict should be for the defendant.
“An unavoidable accident is one happening suddenly and unexpectedly without any negligence on the part of the parties to the ligitation [sic].” This court approved the giving of the above instruction and quoted with approval from Union Pacific v. Shupe, 131 Colo. 271, 280 P. (2d) 1115, involving an automobile-train collision as follows:
“The purpose of this instruction was to permit the jury to find that the accident was an extraordinary occurrence and that the ordinary care required of both plaintiff and defendant would not have averted it.
;¡; ¡i'. *
“* * * The giving of the instruction of unavoidable accident would have furnished guidance for the jury in finding no negligence on either side.”
The record in the instant case shows evidence on behalf of the defendant which required the giving of Instruction No. 11 on its theory of the case. The instruction was proper and pursuant thereto the jury would be justified in deciding that there was no negligence or fault on the part of either party involved.
The jury could easily have concluded from the evidence in this case that neither party was at fault and *348 that this was an unexpected, sudden and unforseeable accident.
Finding no error in the record,. the judgment of the trial court is affirmed.
Mr. Chief Justice Day and Mr. Justice Frantz concur.