## SEPTEMBER TERM, 1895.

### THE DENVER CONSOLIDATED ELECTRIC COMPANY v. SIMPSON.

1. PLEADING—EVIDENCE.

Where it was alleged that the presence in the alleyway of the wire which caused the injury complained of was due to the negligence of the defendant in omitting to exercise due care in building its line, and culpable negligence in failing to keep it in good repair, evidence that notice of the defect had been communicated to the defendant in time to make repairs before the accident occurred tends directly to establish the issue of negligence.

2. PRACTICE—SPECIAL FINDINGS.

While it is provided by the code that "in any case in which the jury render a general verdict, they may be required by the court to find specially upon any particular question of fact to be submitted to them in writing," the giving or withholding of such questions is within the discretion of the court.

3. NEGLIGENCE—EVIDENCE.

Except in some relations springing out of contract, the mere happening of an accident is not evidence of negligence.

4. NEGLIGENCE, DEGREES OF.

Degrees of negligence, such as slight and gross, are not recognized in this court.

5. CARE—DILIGENCE.

A person carrying on a business perilous to the public is bound to exercise that reasonable care and caution which would be exercised by reasonably prudent and cautious persons under the same or similar circumstances. The care should increase as the danger does, and when the business is attended with great peril to the public, the care to be exercised is commensurate with the increased danger.

*Appeal from the District Court of Arapahoe County.*

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for appellant.

Mr. E. CAYPLESS, Mr. H. N. SALES and Mr. E. KEELER, for appellee.

Mr. Justice Campbell delivered the opinion of the court.

This was an action by the appellee to recover damages for personal injuries. The evidence tends to show that the appellant, for the purpose of furnishing light, was engaged in the business of conveying and distributing electricity throughout the city of Denver by means of wires attached to and suspended from poles placed in the streets and alleys of the city.

While the plaintiff was lawfully passing along one of the public alleys in the city, without any fault on his part, he came in contact with one of the defendant's wires, heavily charged with electricity, which wire had become disconnected and detached from its overhead fastening, and was hanging down to within about two feet of the ground in said alley. As the result of such contact, plaintiff received a severe shock from the electricity carried by the wire, and was seriously injured.

The negligence charged against the defendant, of which there was some proof, consisted in its failure properly to construct its line and its omission to take the necessary precautions to prevent the wires from falling and causing injury in case they became detached from their fastenings.

There was a verdict for the plaintiff in the sum of twenty-eight hundred dollars, upon which the court entered judgment, to reverse which the appellant prosecutes this appeal.

The principal errors assigned relate to the overruling by the trial court of the defendant's demurrer to the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action ; to the admission of evidence, over the defendant's objection, tending to show that the defendant had notice of this defect in its line in time to make repairs before the accident; to the refusal of the court to submit to the jury, at the request of the defendant, certain questions for their answer ; and to the giving of certain instructions by the court, over defendant's objection, defining the duty of the defendant to the traveling public.

The defendant's objection to the sufficiency of the com-

plaint arises out of the supposition indulged in by its counsel that counsel for the plaintiff assumed that the defendant was an absolute insurer of the safety of the public from all danger from its wires, and drew his complaint upon that theory.   If such were the fact, the complaint would be bad, for the defendant is not an insurer; but aside from certain allegations found in the complaint which, by themselves alone, might bear such construction, there are specific allegations to the effect that the presence in the alleyway of the wire which caused the injury was due to the negligence of the defendant in omitting to exercise due care in building its line, and culpable negligence in failing to maintain it in good repair.

The original complaint contained an allegation that the defendant had notice of this fallen wire in time to repair the defect before the accident, but failed to do so.   In the amended complaint this averment was omitted, and therein a general allegation was inserted to the effect that the defendant was negligent not only in failing to keep its wires in good repair, but was also negligent in constructing the same.   Before, or possibly during, the trial, in a conversation between counsel for the plaintiff and the defendant, the counsel for the defendant insists that he was led to believe that no evidence would be offered by the plaintiff tending to show that any notice was given to the defendant of this defect.   At the trial, however, the plaintiff did offer testimony as to such notice, which notice was alleged to have been transmitted over the telephone by the witness Hedges to the office of the company prior to the accident, which evidence the defendant subsequently moved to withdraw from the jury for the reasons above given, and because such evidence tended to prove no issue in the case.

We think the defendant was not prejudiced by this evidence.   It tended directly to establish the issue of the negligence charged, and there was no attempt by counsel for plaintiff to mislead the defendant, nor is it so claimed by appellant.   Besides, while counsel for the defendant may have been, in a sense, surprised by this evidence, yet his affi-

davit on this point does not point out that he would be able on a new trial to produce evidence from any officer or employé of the company that such notice was not actually received at the office of the company.  Had a continuance been granted after this evidence was offered, the defendant claims he would have been able to produce evidence that the record at the police headquarters, where a memorandum of such complaints is kept, would show that no such complaint or notice was sent in on the night in question by the policeman Olsen, who testified that he reported to police headquarters this defect in the wires after the accident occurred.  This is no such showing as would warrant the court in granting a new trial on the ground of newly discovered evidence, nor is it sufficient to warrant us in saying that the court committed error in admitting testimony in regard to the notice.

The defendant requested the court to submit to the jury certain interrogatories to be answered by them along with their general verdict.  These were whether the defendant was guilty of negligence, and, if so, in what particular; at what time the accident occurred; at what time the wire was first down; whether the defendant had notice of the fallen wire before the accident; if so, how long before; and whether, if the defendant had such notice, it allowed an unreasonable time to pass before the accident without repairing the same.

Section 199, code of 1887, provides: "In any case in which the jury render a general verdict, they may be required by the court to find specially upon any particular questions of facts to be stated to them in writing."   This is substantially like the Nebraska code, and in *Floaten v. Ferrell*, 24 Neb. 347, it was held that the giving to or withholding from the jury of questions for special findings of fact was within the discretion of the court.  We may add that we perceive no special objection to the interrogatories submitted by the defendant to the court, and it certainly would not have been error had the court submitted them to the jury; but we cannot say that the refusal to give them was such an abuse of discretion as to justify a reversal on that ground.   The

return of a verdict for the plaintiff under the instructions as given to the jury must necessarily have been equivalent to an answer by the jury of each of these questions against the defendant. Hence we fail to perceive that the defendant was prejudiced in any substantial right.

The most important and difficult questions concern the instructions given by the court. The defendant requested a number of instructions, some of which the court refused altogether, others it gave with modifications. This branch of the case we will consider under two general heads: alleged error of the court in instructing upon what constitutes *prima facie* negligence in cases of this kind; alleged errors in instructing as to the nature and extent of the duty of the defendant to the general public using the highway over and across which its wires are strung.

In substance, the court instructed the jury that if they found that the defendant's wire was so charged with electricity as to become dangerous to persons coming in contact with it, and that the wire had become disconnected or detached from its fastenings and hung down in a public alley so as to endanger public travel, that, of itself, was *prima facie* evidence of negligence on the part of defendant. Strictly speaking, except in some relations springing out of contract, the mere happening of an accident is not any evidence of negligence. Thompson on Carriers of Passengers, p. 209, sec. 9. But in some cases of tort it has been held that the existence of certain facts, unexplained, is some evidence of negligence. *Thomas v. Western Union Tel. Co.*, 100 Mass. 156, and *Haynes v. Gas Company*, 114 N. C. 203, are cases in point, and are authority for the instruction given in this case.

This is the first case in this court where it has become necessary to determine the duty to the traveling public resting upon a person or corporation distributing electricity by means of wires suspended above a public street or alley. The employment of electricity for supplying light is of comparatively recent origin. The best methods of constructing

lines for its distribution, and the precautionary steps to be taken to guard the public from the dangers incident to its use, may not be known or fully understood. But enough is known to justify the statement that the business of distributing electricity on wires strung over the streets of a city is a dangerous business and attended by peril to travelers along the highway.

This court does not recognize any degrees of negligence, such as slight or gross, and logically it ought not to recognize any degrees in its antithesis, care. The court instructed the jury in this case that the defendant was not an insurer of the safety of plaintiff, but that in constructing its line and maintaining the same in repair, it was held to the utmost degree of care and diligence; that in this respect it is bound to the highest degree of care, skill, and diligence in the construction and maintenance of its lines of wire and other appurtenances, and in carrying on its business, so as to make the same safe against accidents so far as such safety can, by the use of such care and diligence, be secured. If it observed such degree of care, it was not liable; if it failed therein, it was liable for injuries caused thereby.

We think the court was unfortunate in attempting to draw any distinctions in the degrees of care or negligence. It would have been safer and the better practice to instruct the jury,—which ought hereafter to be observed,—even in cases like the one before us, that the defendant was bound to exercise that reasonable care and caution which would be exercised by a reasonably prudent and cautious person under the same or similar circumstances. In addition to this, the jury should have been instructed that the care increases as the danger does, and that where the business in question is attended with great peril to the public, the care to be exercised by the person conducting the business is commensurate with the increased danger. But, in effect, this is what the court did. Under the facts of the case, the law required of the defendant conducting, as it did, a business so dangerous to the public, the highest degree of care which skill and foresight can

attain consistent with the practical conduct of its business under the known methods and the present state of the particular art. This is the measure of the duty owed by a common carrier to a passenger for hire. Thompson's Carriers of Passengers, p. 208, and cases cited. Not for the same reason, or because the doctrine rests upon the same principle, but with even greater force should this rule apply to a person or corporation engaged in the equally, if not more, dangerous business of distributing electricity throughout a city by means of wires strung over the public alleys and streets, in so far as is concerned its duty to the traveling public.

In those courts where degrees of negligence are not countenanced, nevertheless, in cases where the duty of a common carrier of passengers is laid down, the jury are told that carriers are bound to the utmost degree of care which human foresight can attain. This is upon the theory that reasonable or ordinary care in a case of that kind is the highest care which human ingenuity can practically exercise, and that, as a matter of law, courts will hold every reasonably prudent and careful man to the exercise of the utmost care and diligence in protecting the public from the dangers necessarily incident to the carrying on of a hazardous business.

Where the facts of a case naturally lead equally intelligent persons honestly to entertain different views as to the degree of care resting upon a defendant, the court ought not to lay down a rule prescribing any particular or specific degree in that case. But where all minds concur—as they must in a case like the one we are now considering—in regarding the carrying on of a business as fraught with peril to the public inherent in the nature of the business itself, the court makes no mistake in defining the duty of those conducting it as the exercise of the utmost care. It was, therefore, not prejudicial error for the court to tell the jury in this case what the law requires of the defendant, viz. the highest degree of care in conducting its business.

The late case of *Block v. Milwaukee St. Ry. Co.*, (Wis.) 61 N. W. Rep. 1101, rightly interpreted, supports this doctrine,

and the case of *Haynes v. Gas Co., supra,* expressly lays down the rule observed by the trial court in the instructions given in this case.

The foregoing considerations dispose of all the errors assigned which we deem necessary to notice. The judgment will be affirmed.

*Affirmed.*