No. 17,446.

UNION PACIFIC RAILROAD COMPANY *v.* BILL C. L. SHUPE.

(280 P. [2d] 1115)

.Decided March 14, 1955. Rehearing denied March 28, 1955.

Mr. E. G. KNOWLES, Mr. CLAYTON D. KNOWLES, Mr. FRANCIS L. SHALLENBERGER, Mr. W. R. ROUSE, Mr. F. J. MELIA, of counsel for plaintiff in error.

Mr. EARL A. WOLVINGTON, Messrs. WOLVINGTON & WORMWOOD, for defendant in error.

MR. JUSTICE LINDSLEY delivered the opinion of the Court.

PLAINTIFF in error was defendant in the trial court, and defendant in error was plaintiff. We will refer to the parties as they there appeared.

This is an action for damages resulting from a collision of plaintiff's truck with defendant's locomotive.

Plaintiff in his complaint alleged that defendant negligently operated one of its locomotives in such a manner as to cause a collision and as a result thereof plaintiff suffered damage. Defendant in its answer denied negligence on its part; alleged that the damages, if any, were solely the result of plaintiff's negligence; and also that if defendant were negligent, plaintiff's negligence contributed to the cause of the accident. Defendant crosscomplained against the plaintiff for its damages, alleging that they were solely caused by plaintiff's negligence. Plaintiff in his reply denied any negligence on his part.

Trial was to a jury; a verdict returned in favor of

plaintiff; and judgment entered thereon in the amount of $2,382.26 plus interest from July 24, 1951. Thereafter defendant's motions for judgment notwithstanding the verdict and for a new trial were denied.

The accident in question occurred at Atwood, Colorado, on July 24, 1951, at a crossing of state highway No. 63 and the railroad tracks of the Union Pacific Railroad. The crossing is a right angle crossing, the highway running generally north and south and the railroad generally east and west. While approaching the crossing from the south, a truck, belonging to Bill C. L. Shupe, and driven by his agent, Harvey Shupe, broke down and became stalled on the crossing with the front of the truck across the railroad tracks. Minutes thereafter Union Pacific train No. 86 enroute from Denver to Omaha, Nebraska, traveling easterly, struck the truck, virtually demolishing it.

The following evidence was undisputed:

The agency of plaintiff's driver and the agency of defendant's servants in charge of the locomotive were stipulated.

The railroad track west of the crossing at Atwood is straight in a generally east-west direction for a distance of 2450 feet; west of that point is a slight curve to the south for a distance of about 1400 feet, and from there on the track is straight to Merino.

Along both sides of the track are telephone and telegraph poles and lines which defendant contended obstruct vision. The time of day was about dusk, neither light nor dark.

The truck, loaded with seven tons of wheat and pulling a trailer with a similar load, approached the crossing traveling north at about fifteen miles per hour. The driver previously had reduced speed by using his gears, but when he stepped on the brake to slow down and cross the tracks there was no response, and it then was discovered that the rear axle had broken; the left rear wheel of the truck slid out still attached to the axle and

the drag brought the truck to a stop across the railroad tracks and prevented it from being pushed off of the crossing. This occurred about ten to fifteen minutes before the accident.

Merle Zimmerman and Jerry Knespel, who had helped Harvey Shupe load the truck, immediately went over to the stockyards to get help in removing the stalled truck. At that time Donald W. Hamil, Eugene Smith and Fred Jarrett, the station agent, were engaged in loading Mr. Hamil's cattle into Mr. Smith's truck. They came back to the crossing and attempted to push the truck back with Mr. Smith's truck and did push it back a few feet, but not enough to clear the track. The station agent, Mr. Jarrett, who was not then on duty, nevertheless grabbed a fusee and started up the track to try and flag the train, warning the others to get clear of the truck and the crossing. He ran west of the crossing somewhere between six hundred feet and a quarter of a mile or better, according to the testimony, and began to wave a lighted fusee (red flare). The signal was acknowledged immediately by a whistle from the train. Prior to this the train had been approaching at a speed of about seventy miles per hour with no scheduled stop or expectation of stopping until it reached Sterling, miles further on.

Despite the efforts of the Union Pacific station agent to flag the train with a fusee, the truck was struck by the locomotive which stopped about 1900 feet beyond the crossing.

According to plaintiff's testimony, when the station agent started to wave the lighted fusee, the train was in sight still a mile to two miles from the crossing and the engineer acknowledged the fusee signal when he was a mile from the crossing, and plaintiff's evidence was to the effect that the engineer could have seen the fusee from a distance of a mile to two miles from the crossing. The speed of the train didn't decrease, nor were there any sparks from the wheels or screeching of the brakes until the time of the impact.

Defendant's counsel urges that plaintiff's witnesses, observing the train approaching head on, were not in a position to observe accurately whether or not the train was decreasing its speed, and the failure to see sparks flying from the wheels, or hear the screeching from the brakes, was in effect negative evidence and of no probative value. The record discloses, and viewed in the most favorable light to the plaintiff, as the evidence should be on a motion to dismiss, that plaintiff's witnesses were watching and observing the approaching train and under the evidence herein the objection of the defendant affects the weight of the evidence, and this Court will not say as a matter of law, under the evidence in this case, that such testimony had no probative value whatever. The court properly instructed the jury as to the weight to be given to the testimony of each witness, calling attention to the fact that they should measure the weight of the testimony by "* * * opportunities for observation * * *."

In *Colorado & Southern Ry. Co. v. Honaker,* 92 Colo. 239, 19 P. (2d) 759, at page 248, the Court stated the rule as follows:

"The probative force of negative testimony depends largely upon circumstances. In some circumstances, its probative force may be so slight as to reach the vanishing point; in other circumstances, such testimony may be more persuasive than the positive testimony of some witnesses. It is only when it is so clear that such testimony has no probative value whatever that reasonable men would not differ in their conclusions with reference thereto, that courts are justified in disregarding it on the ground that it does not rise to the dignity of evidence. That is not the situation in the case at bar."

Upon the above evidence the court correctly denied a motion for nonsuit at the conclusion of the plaintiff's case.

The defendant thereupon introduced its evidence which disclosed the fact that the train could be stopped

in 4900 feet and that an emergency stop, which is likely to damage the train, might reduce this distance by about 500 feet. Defendant's evidence disclosed that the vision was obscured by the telegraph poles and lines along the track as the train emerged from the curve; that according to defendant's evidence the brakes of the train were applied at approximately the middle of the curve, at a distance of approximately 3100 feet from the point of impact, and that it was impossible to see the signal of the fusee flare until the train was well around the curve; that according to defendant's engineer's best recollection, and subsequent actual measurements made several months thereafter, the power was cut off and the brakes set and the necessary signal given by the locomotive at a point 2807 feet from the crossing; further that it was impossible in the distance remaining before the point of impact to bring the train to a stop, and that the engineer of the train did everything possible to avoid the accident.

At the conclusion of the defendant's case a motion for directed verdict was made by defendant. Here again the trial court correctly held that upon the conflicting evidence a jury question was presented, and denied the motion.

It will appear from the recitation of the evidence above that the errors specified in denying defendant's motion to dismiss and its motion for directed verdict were correct, as a factual issue was presented as to whether or not the railroad acted in a careful and prudent manner under the circumstances above set forth.

Defendant also specifies error in the refusal of the court to give its tendered Instructions Nos. 1 to 5 inclusive. We shall consider only the refusal to give Instruction No. 1, which refusal, in our opinion, constitutes reversible error.

Instruction No. 1 tendered the issue of "unavoidable accident" and reads as follows:

"You are instructed that an 'unavoidable accident' is such an occurrence, as under all circumstances, could

not have been foreseen, anticipated or avoided in the exercise of ordinary care, and that if you find from the evidence that the injury and damage sustained by all parties was due to an 'unavoidable accident', then your verdict should be for the defendant, against the plaintiff, on the plaintiff's complaint, and for the plaintiff, against the defendant, upon its cross-complaint."

The purpose of this instruction was to permit the jury to find that the accident was an extraordinary occurrence and that the ordinary care required of both plaintiff and defendant would not have averted it.

 It is disclosed by the record before us that there is evidence to substantiate the fact that plaintiff's truck may have been stalled upon defendant's railroad tracks, through no fault or negligence of plaintiff, and that the locomotive crew of defendant may have been warned of the presence of the danger ahead at a time too late, even in the exercise of a reasonable lookout, to avert the accident. Under such circumstances the accident could have occurred and the damage resulted through no dereliction of duty upon the part of either plaintiff or defendant. Defendant is entitled to have this theory of law presented to the jury when the evidence supporting it is in the record.

 Plaintiff asserts that unavoidable accident was not pleaded and that it is too late at the time of the tendering and refusal to give this instruction to inject this issue into the case. While it is the usual practice to plead unavoidable accident as an affirmative defense, the fact still remains that unavoidable accident is but a denial of negligence, and in this case where the pleadings disclose that there were mutual denials of negligence, the issue is in the case.

In *Carr v. Boyd*, 123 Colo. 350, 229 P. (2d) 659, as appears at page 353, the court gave an instruction on unavoidable accident, and error was assigned. In the present case the court refused to give an instruction on un-

avoidable accident and error is assigned. We said in *Carr v. Boyd, supra:*

"The record discloses no positive objection to the giving of the unavoidable-accident instruction and counsel frankly admits that opposing counsel's objection to this specification of error is difficult to overcome because of the failure to note an objection to the giving of this instruction at the trial. The record containing this given instruction is before us and we are at liberty, on our own motion, to determine whether or not it was properly given, and if improperly given, then the prejudicial effect thereof. The interest of the litigant should not always be precluded on a technical inadvertence of counsel."

The record further discloses that the damages of the respective parties were agreed upon, that three forms of verdict were submitted to the jury, one for the plaintiff and against the defendant; one for the defendant and against the plaintiff upon the defendant's cross-complaint; and the third against both parties on their complaint and cross-complaint respectively. Under the instructions herein it is conceivable, and quite likely, that the third verdict would require a finding by the jury of negligence on each side; that is, negligence on the part of plaintiff. The giving of the instruction of unavoidable accident would have furnished guidance for the jury in finding no negligence on either side.

Able counsel for plaintiff, in their brief, with commendable candor, state that, "even if the failure to give said instruction was error, the defendant was not prejudiced." With this statement we cannot agree, as the jury is entitled to be instructed upon the law applicable to the factual situation in each case.

For the above reasons the judgment is reversed and the cause remanded for a new trial.

Mr. Chief Justice Alter, Mr. Justice Clark and Mr. Justice Knauss dissent.