No. 20482.

RAYMOND AND JANICE LEWIS, ET AL., *v.* BUCKSKIN
JOE'S, INC., ET AL.
(396 P.2d 933)

Decided November 30, 1964. Rehearing denied December 21, 1964.

STINEMEYER and STINEMEYER, for plaintiffs in error.

JOHN STUMP WITCHER, for defendant in error Buckskin Joe's, Inc., a corporation.

PHELPS, FONDA, HAYS and WILLS, for defendants in error Ashton and Talbert.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

ON February 23, 1960, Juanita N. Grinfield and Walter C. Grinfield (wife and husband), and Michael Grinfield, a minor, by Walter C. Grinfield, his father and next of friend, commenced an action, No. 8233, by filing a complaint in the District Court of Fremont County, Colorado. Named as defendants were Buckskin Joe's, Inc., a Colorado corporation; Dave Ashton, an individual, and Ed Talbert, an undividual.

In this complaint there are four separately stated claims for relief.

Juanita seeks to recover $50,000.00 compensatory and $25,000.00 exemplary damages for personal injuries, medical expenses, etc., caused by the alleged negligence of the defendants.

Walter, in a first claim for relief, seeks to recover $1,000.00 compensatory and $500.00 exemplary damages for personal injuries, medical expenses, etc., caused by the alleged negligence of the defendants. In a second claim for relief he seeks to recover $10,000.00 compensatory and $5,000.00 exemplary damages for loss of con-

sortium and marital rights occasioned by the injuries suffered by his wife, Juanita.

Michael seeks to recover $1,000.00 compensatory and $500.00 exemplary damages for personal injuries, medical expense, etc., caused by the alleged negligence of the defendants.

Each plaintiff alleged the same acts of negligence. They charged:

1. That the accident and attendant injuries would not have occurred except for the negligence of the defendants:

"* * * in the operation and driving of, or the use of defective parts in, said stagecoach."

2. "* * * the * * * stagecoach was a dangerous instrumentality, * * * said stagecoach was defective in the design or manufacture, or materials used, or the testing and maintenance of certain parts thereof, *more specifically as related to a certain part known as a 'singletree' thereof, which broke, contributing to the said accident; and said Defendants * * * knew, or should have known of the defective condition of said part * * *.*" (Emphasis supplied.)

3. "The negligence of Defendants * * * in the manner of driving of said vehicle around an unbanked turn, was of a nature amounting to wilful and wanton negligence * * *."

On September 1, 1960, the defendants Ashton and Talbert filed their answer, which contains the following:

1. "Defendants deny each and every allegation set forth in the Complaint and Bill of Particulars."

2. The proximate cause of plaintiffs' injuries, if any, was plaintiffs' negligence.

3. The proximate cause of plaintiffs' injuries, if any, was substantially and materially contributed to by plaintiffs' negligence.

4. The plaintiffs knew of the risks involved and assumed the same.

5. The proximate cause of plaintiffs' injuries, if any,

was the sole negligence of the defendant, Buckskin Joe's, Inc.

6. The proximate cause of plaintiffs' injuries, if any, was the sole negligence of persons not parties to this action and over whom defendants had no control.

7. The proximate cause of plaintiffs' injuries, if any, was an unavoidable accident.

8. The plaintiffs' complaint fails to state a claim upon which relief can be granted.

On September 27, 1960, Buckskin Joe's, Inc., filed its answer, wherein it set forth seven defenses to each of plaintiffs' four separate claims for relief. In substance, the answer sets up the following defenses:

1. The complaint does not state a claim against the defendant upon which relief can be granted.

2. For a second defense, admits part, denies part, or pleads lack of information of the truth of the allegations of plaintiffs' complaint. It denies all allegations of negligence on its part.

3. Contributory negligence.

4. Unavoidable accident.

5. Assumption of risk.

6. The proximate cause of the accident was the negligence of the defendants Ashton and Talbert.

7. The proximate cause of the accident was the negligence of persons who are not parties to the action and over whom the defendant had no control.

On May 26, 1960, Robert and Georgia Lewis (husband and wife), and Bobby Lewis, age two years, Judy Lewis, age three years, and Linda Lewis, age four years (children of Robert and Georgia), commenced an action, No. 8274, by filing a complaint in the District Court. In their complaint they named as defendants, Buckskin Joe's, Inc., Dave Ashton and Ed Talbert.

These plaintiffs in their complaint set forth only one "cause of action." Each complains of injuries suffered at the same time and place as alleged by the Grinfields; however, they do not rely upon or charge the defend-

ants with the same acts of negligence which the Grinfields rely upon and charge. They base their case upon different grounds, i.e.:

(1) They allege they were not directed by defendants where to sit in said stagecoach, and that:

"* * * the passengers were not properly seated in said stagecoach so as to properly proportion the weight so as to insure said stagecoach to remain upright and safe."

(2) "That said stagecoach was operated * * * at such speed * * * as to cause same to upset."

(3) "That the route established * * * and traveled * * * was neither safe nor proper * * * and its turns were not properly laid out for safe operation of a stagecoach in the manner and speed at which defendants so operated said stagecoach."

Plaintiffs Lewis, unlike the Grinfields, make no mention of any defective "singletree * * * which broke."

In their complaint they set forth injuries suffered by each plaintiff. The most serious injuries were alleged to have been suffered by Linda, who, it is said:

"* * * suffered a supracondylar fracture of the left humerus, shock, pain and mental anguish both at the time of injury and since, and the permanent results of the fracture above alleged are a crippled and deformed left arm from which there is no operative technique for relief, besides such deformity she suffers a 15% loss of the left arm at the elbow as permanent disability, and suffers in addition to pain and discomfort now and permanently, embarrassment and extreme mental anguish as a result of such deformity and disability, and will suffer such for the rest of her natural life expectancy, which is 60.48 years." (Proof of the foregoing is uncontradicted.)

The plaintiffs seek compensatory damages as follows:

| | | |
|---|---|---:|
| 1. | Robert Lewis | $ 5,950.00 |
| 2. | Georgia Lewis | 5,500.00 |
| 3. | Bobby Lewis (age two) | 250.00 |
| 4. | Judy Lewis (age three) | 250.00 |

5. Linda Lewis (age four) 36,000.00

Total---------------------- $47,950.00

Unlike the Grinfields, none of the plaintiffs Lewis charged the defendants with wilful or wanton conduct; none claimed exemplary damages.

On October 3, 1960, Ashton and Talbert filed their answer to this complaint—the identical answer they filed to the Grinfield Complaint.

On October 10, 1960, the plaintiffs filed a so-called reply to defendants' answer. Robert and Georgia, therein, moved to strike from defendants' answer the first defense (general denial); second defense (sole negligence of plaintiffs as cause of injury); third defense (contributory negligence), and assign as reason therefor that plaintiffs were:

"* * * paying passenger[s], of a carrier or a vehicle which was owned and operated at all times and under the exclusive control and supervision of the defendants or a combination of one or more of them."

Bobby, Judy and Linda, in their reply, moved to strike from defendants' answer the above mentioned first, second and third defenses and, in addition, the fourth defense (assumption of risk), fifth defense (sole negligence of plaintiffs), sixth defense (sole negligence of Buckskin Joe's, Inc.), seventh defense (sole negligence of persons not parties to action), for the reason that:

"* * * said plaintiffs are minors and of tender age, and have neither the legal responsibility for committing negligence and for assuming the risk, further that they were paying passengers in a vehicle or carrier, which was under the sole, exclusive operation and control of the management of the defendants or one or more, or a combination of them."

On January 9, 1961, Buckskin Joe's, Inc., filed its answer to plaintiffs' complaint and admitted or denied the allegations of the complaint, and as further defenses set up contributory negligence, unavoidable accident, assumption of risk, that the cause of the accident and

injuries was the negligence of Ashton and Talbert and the negligence of persons not parties and over whom the defendant had no control.

On May 26, 1960, Raymond and Janice Lewis (husband and wife) and Cindy Lewis, age three years, and Steven Lewis, age nine months (children of Raymond and Janice), commenced an action, No. 8273, by filing a complaint in the District Court. They named as defendants Buckskin Joe's, Inc., and Dave Ashton and Ed Talbert. The allegations in this complaint are identical with those in the other Lewis complaint (Action No. 8274), except as to the names of the plaintiffs, the nature and extent of their injuries and the amounts sought as damages—the total amount sought being $5,207.25.

Answers filed by the defendants were identical with the answers filed in the other Lewis case (Action No. 8273).

The plaintiffs filed no reply in this case.

On January 10, 1961, Ashton and Talbert filed motions for consolidation of the three cases. They allege as reasons for consolidation that:

"* * * said Civil Actions contain common questions of law and fact, that consolidation will avoid unnecessary costs and delay, and that the ends of justice will be prompted thereby."

Each Lewis family (plaintiffs in Actions Nos. 8273 and 8274) filed identical "answers" to these motions and pointed out that there were four plaintiffs in Action No. 8273 and five in Action No. 8274, and that even to consolidate these two cases for trial would complicate the trial of the issues; and further, that:

"* * * Civil Action No. 8233 (the Grinfield case), the title of which is completely unknown to the plaintiffs herein, and the cause of action, the parties or subject of the action is to the plaintiffs unknown, and these plaintiffs are unwilling to and hereby state to the Court that they feel that their respective causes of action would be prejudiced, jeopardized, unnecessarily and un-

warrantedly complicated by an act of consolidation of cases 8273 and 8274 or either of them with cause No. 8233."

The objections to consolidation were denied and on January 18, 1961, consolidation of all three cases was ordered.

Trial was commenced September 27, 1961, and the case submitted to the jury at 10:45 P.M., September 30, 1961 (Saturday night), and six verdicts returned within forty minutes resolving the issues in favor of the defendants. On the same date the trial court entered a judgment in each case in favor of the defendants and against all of the plaintiffs, and in each judgment provided that the defendants recover their costs. On July 13, 1962, the trial court entered an order awarding defendants additional costs as expert witness fees; $350.00 of the amount awarded being against the Grinfields.

Motions for a new trial were filed by all plaintiffs and were denied.

The Lewis families are here seeking reversal.

Walter (Staff Sergeant) Grinfield, at the time of the trial, was under orders of transfer from Fort Carson to Fort Dix, New Jersey, for overseas shipment to Germany. The Grinfields do not seek review of the judgment entered against them.

The Lewis families, in their motions for a new trial, assigned fourteen reasons for granting the same. Here, they urge only two errors as grounds for reversal, namely: (1) the refusal of the trial court to give tendered instructions (charging the defendants with the duty of exercising the "highest degree of care") and the giving of an improper instruction (charging the defendants with the duty of exercising only "ordinary care"), and (2) that it was error to try the case beyond reasonable hours and to submit the case with all of its complications to the jury at 10:45 P.M., Saturday night.

From the record it appears that Buckskin Joe's, Inc., at the time plaintiffs were injured, was a lessee in pos-

session of a tract of land near Canon City, Colorado. On this land, it had constructed what purported to be a replica of a ghost mining town. In the town were numerous buildings and tourist attractions, most of which were operated under "concession leases" granted to various persons by Buckskin Joe's, Inc.

On May 1, 1959, Buckskin Joe's, Inc., had entered into a concession lease with the defendant Ashton, whereby Ashton was to conduct a stagecoach ride patterned after and comparable to stagecoach rides enjoyed or suffered by early settlers of Colorado. Ashton was supplied with a "Wells Fargo Co." office in the town where he sold tickets and where the ride commenced and ended. In order to conduct his business, and with the sanction and consent of Buckskin Joe's, Inc., Ashton constructed a roadway, commencing at the office, which took a somewhat circuitous route, uphill and down, for a distance of about one and a quarter miles, thence returning to the office. He also acquired a replica of a stagecoach used in the early days of the Cripple Creek gold rush and four horses to draw the coach. To add flavor to the stagecoach ride, he engaged as the driver of the coach the defendant Talbert, age "past 81 years," a man of many years' experience in driving stagecoaches.

The roadway was rutted, at places banked on curves so that the outside of the curve was the low side. The horses were driven at a walk, jog, trot or gallop, in order to "give the people having the ride a kind of thrill and excitement." The overall effect, drawing the coach along the road, at the speeds pursued and with the equipment provided, was that the coach would sway "quite a little bit in the motions of the road and the motions of the horses pulling, * * *."

On June 7, 1959, all twelve plaintiffs, all paying passengers, entered the coach and were driven over the course at varying speeds. As they neared the end of the ride and were proceeding around a curve, the coach overturned, "capsized," and all twelve were injured in

varying degrees and for which injuries they sought, but were denied, damages.

■ Rule 111(f) R.C.P. Colo., provides that:

"* * * each party * * * shall state clearly and briefly the grounds upon which he relies in seeking a reversal or modification of the judgment or the correction of adverse findings, orders, or rulings of the trial court. He will be limited to the grounds so stated although the court [this court] may in its discretion notice any error appearing of record. * * *."

This court has on numerous occasions, when the ends of justice will be served, noticed errors not urged as grounds for reversal. In *Neilson v. Bowles,* 124 Colo. 274, 236 P.2d 286, this court said:

"This court may notice questions, not raised by the assignments of error, that appear on the face of the record, when such consideration is necessary to do justice. * * *."

See, also, *Warner v. Barnard,* 134 Colo. 337, 304 P.2d 898; *Maloy v. Griffith,* 125 Colo. 85, 240 P.2d 923; *Kendall v. Hargrove,* 142 Colo. 120, 349 P.2d 993.

■ The purpose of litigation is to arrive at truth and to render justice. Clearly, the results here attained are devoid of truth and lacking in justice.

The record before us discloses many errors other than those here assigned—errors which might well dictate a reversal and retrial—errors which, in addition to the errors assigned, we note and discuss.

■ Considering the first *assigned* error, we find that in Instruction No. 3 the court instructed the jury that the defendants owed a duty of ordinary care. The facts in this case do not warrant the giving of such instruction, but dictate an instruction placing a duty on the defendants to exercise the highest degree of care commensurate with the practical operation of the stagecoach over the route prepared and maintained by the defendants for the *carriage* or *amusement* of those who pay the required fee.

It is not important whether defendants were serving as a carrier or engaged in activities for amusement. The important factors are, the plaintiffs had surrendered themselves to the care and custody of the defendants; they had given up their freedom of movement and actions; there was nothing they could do to cause or prevent the accident. Under the circumstances of this case, the defendants had exclusive possession and control of the facilities used in the conduct of their business and they should be held to the highest degree of care, and the court should have so instructed the jury; failure so to do constitutes error dictating a reversal and retrial.

In considering the second *assigned* error, complaining of the fact that trial was had at unreasonable hours, and the case, with all of its complications, submitted to the jury at 10:45 P.M., on a Saturday night, we find nothing in the record indicating that any party, attorney or juror, though all had ample opportunity so to do, voiced any protest to the conduct of the trial court with reference to these matters. In view of the fact that the case is being reversed on other grounds, we do not find it necessary, nor do we deem it advisable, to resolve this problem so presented. In failing so to do, it is not to be assumed that we place our approval on the procedures pursued, which procedures plaintiffs, after having fared badly, now find very distasteful and urge as grounds for reversal.

In view of the fact that there may be a retrial of these two cases, we deem it proper and important that we point out and discuss errors, *not assigned,* to the end that in the event of a retrial they not be repeated.

By their three answers, Ashton and Talbert, in their general denials, in effect deny (1) that they are individuals; (2) that Talbert resides in Fremont County (though his answer gives his address as Canon City, Colorado); (3) that they keep horses; (4) that they provide stagecoach rides; (5) that Talbert was the employee of Ashton; (6) that Talbert was the driver of the stage-

coach; (7) that the plaintiffs paid a fare for a stagecoach ride; (8) that the plaintiffs were paying passengers; (9) that the stagecoach capsized; (10) that any of the plaintiffs were injured; (11) that a "singletree" of said coach broke contributing to the accident.

Rule 8(b), R.C.P. Colo., outlines procedures to be followed in pleading defenses. Needless to say, the rule contemplates an answer that speaks the truth. The record here clearly demonstrates that none of the eleven above-mentioned denials has any foundation in fact. Compliance with Rule 11, R.C.P. Colo., should be had in all pleadings. The general denial should not have been filed. It, lacking in truth, should not have been submitted to the jury as a part of the issues to be resolved.

Here, the court instructed the jury as to the issues as made up by the pleadings, rather than upon the issues as made up by the evidence. Often they are the same; not here.

The court, in seeking to inform the jury as to the issues to be resolved, instructed the jury as follows:

"* * * all of the Plaintiffs herein allege * * *. That they became paying passengers on a stagecoach line operated and managed on said premises by Ed Talbert Individually or as an agent or employee of Dave Ashton, or Buckskin Joe, or both.

"Further, that as a result of the negligence of defendants, or any one or more of them, said stagecoach overturned while plaintiffs were passengers and they were thereby injured and damaged."

* * *

"All of the defendants deny negligence and in their affirmative defenses allege that if plaintiffs were injured it was a result of their own negligence, or that plaintiffs were contributorily negligent, or that plaintiffs knew of, or could have, known of risks involved and, therefore, assumed the same, or that the accident was the result of the negligence of persons not parties to this action and

over whom they had no control, or that the proximate cause of the injuries and damages claimed by plaintiffs was an unavoidable accident.

"The foregoing are contentions made by the parties and not considered evidence. They are merely statements of what the parties hope to prove."

The foregoing is all that the trial court told the jury about the case and the issues presented by the pleadings and proof (except the claimed damages) that they were called upon to resolve. This instruction does not even inform the jury as to who are parties. In the caption preceding the instruction, the defendants are referred to as "BUCKSKIN JOE, INC., et. al." The plaintiffs are referred to as "JUANITA N. GRINFIELD, et al.," "ROBERT and GEORGIA LEWIS, et. al.," and "RAYMOND and JANICE LEWIS, et. al." Nowhere in the instructions is Talbert or Ashton designated as a defendant. Nowhere in the instructions is there any indication as to who "et. al.," whether plaintiffs or defendants, may be. This instruction is wholly inadequate as a statement of who the parties are and the issues to be resolved.

Though this instruction may correctly state the contents of the pleadings, it is not a correct statement of the issues to be considered and resolved by the jury.

There is not one scintilla of evidence in the record that the plaintiffs, or any of them, were chargeable with contributory negligence, or that their injuries were the result of their own negligence, or the negligence of persons not parties to the action.

Children of very tender years, certainly nine-month-old babies, are incapable of negligence; they assume no risks.

In 53 Am. Jur., Trial, § 509, it is stated as a general rule that:

"The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for

the court to assist them. The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relations of the particular evidence adduced to the particular issues involved. One of the most important duties of the court is to expound the law to the jury, and in his instructions he should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled."

In *Maloy v. Griffith*, 125 Colo. 85, 240 P.2d 923, this court said:

"* * * It is universally held that the law in every case, no matter in what form it may be presented, is a matter for the court's determination, and we hold that it is the duty of the court to declare the law for it is the duty of the jury to render its verdict based upon the law and the evidence. In Colorado we have held that it is the duty of the trial court, on its own motion, in the absence of a request therefor, to instruct the jury as to the element of damages, the basis on which the assessment thereof shall be made, and within what limits the damages may be estimated. * * *."

The giving of the foregoing instruction as to the issues could not serve to:

"* * * furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, * * *."

It could only serve to confuse the jury and possibly to lead them to resolve issues that were not properly before them.

The record discloses that the primary issue to be resolved by the jury was: WERE PLAINTIFFS' INJURIES CAUSED BY THE NEGLIGENCE OF THE DEFENDANTS OR ONE OR MORE OF THEM? Nothing more or less. The instructions should have been confined to that issue and the extent of damages for each plaintiff.

█ Instruction No. 7 is as follows:

"You are instructed that an unavoidable accident is such an occurrence, as under all circumstances could not have been foreseen, anticipated or avoided in the exercise of ordinary care, and that if you find from the evidence that the injuries to the Plaintiffs, if any, were due to an unavoidable accident, then your verdict should be for the Defendants."

This instruction should not have been given. Instructions on negligence and contributory negligence are sufficient and inclusive of so-called unavoidable accidents. To further instruct on unavoidable accident serves only to twice tell the jury that the plaintiff cannot recover unless he proves negligence.

Though this court has sanctioned the giving of instructions on unavoidable accident and, on occasion, held it to be reversible error to refuse to so instruct, we now determine that to give such instruction or to recognize unavoidable accident in an action based on negligence, as an independent element, separate and apart from negligence and contributory negligence, is improper.

In a very recent case, *Fenton v. Aleshire,* (decided June 17, 1964), 238 Or. 24, 393 P.2d 217, the Supreme Court of Oregon has gone on record as disapproving the giving of an instruction on unavoidable accident. There, the court said:

"We have re-examined the question and have reached the conclusion that the instruction on unavoidable accident should not be given in any case.

" 'Unavoidable accident' has been defined by this court as an accident which occurred without the negligence of anyone, Murphy v. Read, 157 Or. 487, 491, 72 P.2d 935.

\* \* \*

"In the modern law of negligence the doctrine of 'unavoidable accident,' or, as it is sometimes called, 'inevitable' or 'pure' accident, is an anomaly. By definition—at least by the definition adopted by this court—it has

no place as a separate and independent element in an action based on negligence. * * * As this court has repeatedly declared, an unavoidable accident is nothing more nor less than an accident which occurs without anyone's fault. In practical effect, when included in the charge of the court to the jury, it is lagniappe to the defendant—not only because it is an added 'you-should-find-for-the-defendant' type of instruction, but because it may be misunderstood by the jury as constituting some sort of separate defense. * * *."

The Supreme Court of California, in *Butigan v. Yellow Cab Company,* 49 Cal.2d 652, 320 P.2d 500, 65 A.L.R.2d 1, stated:

"In the modern negligence action the plaintiff must prove that the injury complained of was proximately caused by the defendant's negligence, and the defendant under a general denial may show any circumstance which militates against his negligence or its causal effect. The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury. * * *. The statement in the quoted instruction on 'unavoidable or inevitable accident' that these terms 'simply denote an accident that occurred without having been proximately caused by negligence' informs the jury that the question of unavoidability or inevitability of an accident arises only where the plaintiff fails to sustain his burden of proving that the defendant's negligence caused the accident. Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose."

We conclude that from and after announcement of this opinion an instruction on unavoidable accident should never be given; and, though recognizing that accidents may be unavoidable, now go on record holding

that a plea of unavoidable accident may not be set up as a separate or independent defense and that to now instruct on unavoidable accident is error. We expressly overrule previous pronouncements of this part to the contrary.

 The record does not disclose any forms of verdicts submitted to the jury whereby findings could be made in favor of any plaintiff. Twelve persons appeared as plaintiffs; one of them, Walter, had two claims for relief. The evidence presented was sufficient to warrant a jury finding in favor of each plaintiff, on each claim, against one, two or three defendants. Had the jury been disposed to award damages to each plaintiff against each defendant, it, to have rendered such verdicts, would have had to review all of the medical testimony of seven doctors, all of the doctor and hospital bills, bills for medicines, and determine the amount that should be allowed on each of the thirteen claims. The jury, at 10:45 P.M., Saturday night, may well have decided to take the easy way and avoid difficulties that were real and not easily resolved, and consequently determined that no plaintiff should recover from any defendant.

The record discloses the following documents as having been given to the jury by the court and the jury's return thereof:

"JUANITA N. GRINFIELD, et. al.,
Plaintiffs,

-v- VERDICT

BUCKSKIN JOE, INC., et. al.,
Defendants.

We, the Jury, duly empaneled and sworn, find the issues herein joined for the Defendants, Dave Ashton and Ed. Talbert, and against the Plaintiffs.

/s/ Leonard Huber
FOREMAN"

64

"JUANITA N. GRINFIELD, et al.,
Plaintiffs,

-v- VERDICT

BUCKSKIN JOE, INC., et. al.,
Defendants.

We, the Jury, duly empaneled and sworn, find the issues herein joined for the Defendant, Buckskin Joe, Inc., and against the Plaintiffs.

/s/ Leonard Huber
FOREMAN"

"ROBERT and GEORGIA LEWIS, et al.,
Plaintiffs,

-v- VERDICT

BUCKSKIN JOE, INC., et. al.,
Defendants.

We, the Jury, duly empaneled and sworn, find the issues herein joined for the Defendants, Dave Ashton and Ed. Talbert, and against the Plaintiffs.

/s/ Leonard Huber
FOREMAN"

"ROBERT and GEORGIA LEWIS, et al.,
Plaintiffs,

-v- VERDICT

BUCKSKIN JOE, INC., et. al.,
Defendants.

We, the Jury, duly empaneled and sworn, find the issues herein joined for the Defendant, Buckskin Joe, Inc., and against the Plaintiffs.

/s/ Leonard Huber
FOREMAN"

"RAYMOND and JANICE LEWIS, et al.,
Plaintiffs,

-v- VERDICT

BUCKSKIN JOE, INC., et. al.,
Defendants.

We, the Jury, duly empaneled and sworn, find the issues herein joined for the Defendants, Dave Ashton and Ed. Talbert, and against the Plaintiffs.
/s/ Leonard Huber
FOREMAN"

"RAYMOND and JANICE LEWIS, et al.,
Plaintiffs,

-v- VERDICT

BUCKSKIN JOE, INC., et. al.,
Defendants.

We, the Jury, duly empaneled and sworn, find the issues herein joined for the Defendant, Buckskin Joe, Inc., and against the Plaintiffs.
/s/ Leonard Huber
FOREMAN"

In these verdicts, for the first and only time, the court disclosed to the jury the fact that Ashton and Talbert were defendants. In the caption on the instructions given and presumably taken to the jury room, the defendants are named as BUCKSKIN JOE, INC., *et al.* In the caption on the verdicts returned, the defendants are named as BUCKSKIN JOE, INC., *et al.*

In 89 C.J.S., Trial, § 499, it is said:

"The verdict must conform to the pleadings with respect to the names and descriptions of the parties, and must be sufficiently definite to make certain the person or persons against whom it is rendered. * * *."

See *Abrams v. Lange,* 158 Neb. 512, 63 N.W.2d 781.

Named in the six verdicts returned by the jury are only five plaintiffs. The other seven plaintiffs are not mentioned by name. For the court, duty bound and no doubt seeking to fully enlighten the jury on the law governing the issues and their duties, to refer to seven of the twelve plaintiffs as "et al" cannot be considered as proper.

Has the jury adjudicated the rights of Judy, Bobby, Linda, Cindy and Steven Lewis—all plaintiffs—all minors of very tender years? We find nothing in this record to warrant an affirmative answer to this question.

■■■ Rule 10, R.C.P. Colo., provides that in the complaint all parties shall be named, but in other *pleadings:* "* * * it is sufficient to state the name of the first party on each side with an appropriate indication of other parties. * * *."

A verdict is not a pleading, and it seems unlikely that those who formulated Rule 10, in making an exception to naming parties in pleadings, had any intention of making the same exception for verdicts and judgments.

■■■ Here, there were verdicts against named plaintiffs and ET AL. Rule 58, R.C.P. Colo., provides that on a verdict being returned, the clerk shall forthwith enter judgment on the verdict. There is nothing in the record to indicate that the clerk entered judgment. However, the record does show that the trial judge entered three judgments, one in each case as originally pleaded, and in each he properly designated each party by name; in so doing he had to rely on information gleaned from sources other than the verdicts which were heavy-laden with "et als."

Although consolidation of the three cases involving twelve plaintiffs and three defendants—cases which in some respects did have "a common question of law or fact"—may not have been an abuse of discretion, it did serve to create problems; problems which neither the court nor counsel adequately resolved, all to the detriment of the plaintiffs.

Though some of the errors above referred to may not of themselves be grounds for reversal, a complete review of the record, including the giving of Instruction No. 3, and others, and the circumstances surrounding the trial, coupled with the attendant indefensible "et al" verdicts, dictates a reversal and vacation of the judgments entered in Actions Nos. 8273 and 8274.

The judgments are reversed and the causes remanded to the trial court, with directions to enter orders setting aside the judgments and granting to the parties in said actions the right to amend their pleadings as they may be advised, and for retrial consistent with the views herein expressed.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur in the result.

MR. CHIEF JUSTICE MCWILLIAMS dissents.

MR. JUSTICE MOORE concurs in the result.

I concur in the result reached by the majority. However, I cannot agree with the majority opinion in so far as it assigns as ground for reversal of the judgment the giving of an instruction to the effect that the degree of care owed by defendants was that of ordinary care. It is my opinion that the majority opinion in this connection is out of harmony with *Hook v. Lakeside Park*, 142 Colo. 277, 351 P.2d 261. I agree with the dissent of Mr. Chief Justice McWilliams on this point, but other errors warrant reversal of the judgment.

Although I was one of those who dissented from the views of the majority in that case, I feel that the majority opinion in the *Hook* case, supra, should be controlling here. Subject to certain exceptions, none of which are here present, when a question has been thoroughly considered and determined by a majority of the court (and the *Hook* case was certainly treated in that manner) it should be adhered to in subsequent cases in which there

are no pertinent distinguishing facts clearly warranting the application of a different rule of law. As one who dissented in the *Hook* case I nevertheless believe that stare decisis is applicable and that the dissenters in that case should yield to the majority view to the end that there may be less uncertainty in the application of legal principles to comparable factual situations.

I see no substantial factual distinction between the *Hook* case and the instant case which warrants application of a different rule upon the subject of degree of care. I cannot join the majority in that portion of the opinion wherein it is said, with reference to the doctrine of "unavoidable accident" that we now go on record holding that a plea of unavoidable accident may not be set up as a separate or independent defense unrelated to charges of negligence and contributory negligence, and that to now instruct on unavoidable accident is error.

On March 14, 1955, this court reversed a judgment for the reason that the trial court refused to give a tendered instruction on the question of "unavoidable accident." *Union Pacific Railroad Company v. Shupe*, 131 Colo. 271, 280 P.2d 1115. In *Stephens v. Lung*, 133 Colo. 560, 298 P.2d 960, one of the questions for determination was:

*"Did the trial court err in submitting to the jury an instruction upon the subject of 'unavoidable accident'?"*

The question was answered in the negative. Five decisions of this court were cited in that opinion, all of which were handed down between March 20, 1950, and March 14, 1955. Each of those opinions recognized and upheld the doctrine of "unavoidable accident." Numerous other authorities could have been cited.

Under these circumstances I cannot bring myself to throw away the doctrine, thus firmly settled in the law, because it does not happen to be consistent with my own philosophical notions of what the law should be.

Our function as judges is to apply well established law as we find it. I am one of those who believe that

there is far too much "judicial legislation," which is another way of saying that judges should not usurp the legislative function.

Mr. Justice Day concurs in the result.

I concur in the result announced by the majority opinion, but I expressly refuse to subscribe to the rule announced by the majority on the duty of care owed by an amusement park operator to its patrons.

Mr. Justice Frantz concurring:

Although I concur in every respect with the majority opinion, I believe it would not be amiss to make what I consider to be some germane observations concerning the standard of care declared to be applicable to the facts of this case in that opinion. In so doing, I would hope to throw some light on the reason why there is division of opinion on this issue of the case.

Disagreement on this issue arises, in part, from a difference in the placement of emphasis on language used in a dictum appearing in the case of *Hook v. Lakeside Park,* 142 Colo. 277, 351 P.2d 261, 86 A.L.R.2d 339. It is true that the dictum is couched in somewhat equivocal terms. But, as I view it, there are clues contained in the dictum which lead with certainty to my theory of what was meant by the language employed.

The language in question is as follows:

"The legal standard applicable to liability for injuries incurred on an amusement device is that of reasonable precautions to avoid injury, or as it is sometimes called, that of *ordinary care.* The circumstances which attend an activity *such as the present one being extremely and intrinsically hazardous, demand a degree of care commensurate with the risk. Consequently* a slight deviation from the *standard* (where, *as here,* the circumstances require *great care*) resulting in personal injury will render the actor liable." (Emphasis supplied.)

Did we announce in the *Hook* case a rule applying a standard of ordinary care, or a standard of great care? Here is the point of divergence. If a dictum is susceptible of two interpretations, we are free to adopt that interpretation most appealing to us as founded upon sound reason when the question is first presented to us for resolution. See *Everts v. Barker*, 58 Utah 519, 200 Pac. 473.

And since the only question confronting us in the *Hook* case concerned the sufficiency of the evidence to justify its submission to the jury, we are for the first time actually called upon to answer the question of the degree of care required in this character of case.

It is my conviction that the dictum of the *Hook* case is not so equivocal that the standard of great care, as applicable, cannot be garnered from that opinion. The majority spoke of "circumstances" "present" in that case which demanded "a degree of care commensurate with the risk." "Consequently," the majority said, "a slight deviation from the *standard* (where, *as here, the circumstances require great care*)" would subject the actor to liability.

A further clue to the purport of the dictum is the citation of authority appearing in the *Hook* case. Illustrative of this matter is *Denver Cons. Elec. Co. v. Simpson*, 21 Colo. 371, 41 Pac. 499, cited by this Court as supporting the applicable rule of care in the *Hook* case. What would the reasonably prudent and cautious person do? The cited case, in part, answered the question as follows:

" * * * Under the facts of the case, the law required of the defendant, conducting, as it did, a business so dangerous to the public, *the highest degree of care* which skill and foresight can attain, consistent with the practical conduct of its business under the known methods and the present state of the particular art." (Emphasis supplied.)

This Court again applied the rule of high degree of care in the case of *Blankette v. Public Service Co.*, 90 Colo. 456, 10 P.2d 327, the other authority from this state relied upon by the majority to support its statement of the standard of care to be applied in the *Hook* case.

For the reasons stated above, I believe we are following the dictum appearing in the *Hook* case and that the majority opinion is correct in its pronouncement of what constitutes the standard of care in this character of case.

Mr. CHIEF JUSTICE McWILLIAMS dissenting:

I respectfully dissent.

The main contention of the plaintiffs is that the trial court erred in its instruction to the jury as to the duty or standard of care owed them by the several defendants. In this regard the trial court instructed the jury that the duty was one of ordinary or reasonable care. The majority of this Court have now decided that this instruction is erroneous and that the defendants "should be held to the highest degree of care." Such a determination in and of itself requires a reversal of the judgment and the majority opinion in my view might well end with that pronouncement. Such, however, is not the case. The majority of the Court in their professed desire to "arrive at truth and to render justice" are only briefly concerned with the basic question posed by this writ of error as to the nature of the duty owed plaintiffs by the defendants, and are primarily concerned with a conglomerate potpourri of "error" which, though clearly perceived by them, was nevertheless not even urged by litigants. I do not view Rule 111(f) Colo. R.C.P. as giving this Court the unbridled power to roam the record in search of "any error," and upon finding such error to then reverse a judgment even though the plaintiff in error did not himself see fit to urge the matter. Rather Rule 111(f) grants us a discretionary

power to notice such error, and in my view this power should be used sparingly. To reverse a judgment on a ground not urged by a plaintiff in error deprives the defendant in error of all opportunity to be heard on the matter. Suffice it to say I am still most reluctant to resolve issues which have not been raised nor briefed by the parties.

Proceeding then to a consideration of an issue which is raised and briefed by the parties and which received only brief consideration by the majority of this Court, I would hold that the duty owed these plaintiffs by the defendants is that of reasonable care under all of the facts and circumstances of the case. Hence, I must dissent from the majority pronouncement that the duty was one of highest care.

In my view this is not a "carrier case," but is one involving an amusement park device. In this regard the majority opinion states that it is "not important whether defendants were serving as a carrier or engaged in activities for amusement" and that the "important factors" are that the "plaintiffs had surrendered themselves to the care and custody of the defendants; they had given up their freedom of movement and action; there was nothing they could do to cause or prevent the accident." These so-called "important factors" do not justify or require that the defendants exercise the highest degree of care. At least I have found no authority for the proposition that the presence of these "important factors" imposes the duty of exercising a high degree of care, nor does the majority opinion cite any authority in support of this assertion.

In their brief the plaintiffs state that the case involves a "stage coach concession in a tourist attraction" and submit that the degree of care owed by the defendants to its patrons is that of a carrier for hire, i.e., "utmost skill, care and prudence." In support of this contention, plaintiffs cite *Denver & Rio Grande Railroad Co. v. Fotheringham,* 17 Colo. App. 410, 68 Pac. 978, a case

involving a common carrier. This reasoning that the degree of care owed by the operator of an old-time stage coach in an amusement park should be the same as that owed by a common carrier for hire is to me illogical and unrealistic. The plaintiffs in the instant case did not board this stage coach for transportation, as such, but took the ride for the purpose of obtaining pleasure and a possible thrill. My thinking in this regard is similar to that set forth in *Brennan v. Ocean View Amusement Co.*, 194 N.E. 911, a case concerned with the degree of care owed by the owner and operator of a roller coaster. There, as here, it was argued that the duty was the same as that of a common carrier for hire. In rejecting that argument the Supreme Judicial Court of Massachusetts said:

". . . The defendant was not a common carrier. It did not perform a public service in transporting passengers from one point to another. It merely furnished entertainment on its own premises. It would hardly be contended that the proprietor of a merry-go-round, for example, is a common carrier."

Thus, in my considered judgment, the duty of these defendants is *not* that of a carrier for hire, but is that of an owner or operator of an amusement park device. There is admittedly a sharp division of judicial expression as to the standard of care owed by the owner and operator of an amusement park device to its patrons. Some states have decreed that the duty is one of highest care, but the general rule is that the owner and operator of an amusement park device has the less onerous duty of ordinary or reasonable care. See 86 A.L.R. 2, p. 350, and Am. Jur. 2, p. 212.

This matter has already been considered by this Court in *Hook v. The Lakeside Park Company*, 142 Colo. 277, 351 P.2d 261. Mr. Justice Frantz in his specially concurring opinion indicates that in his judgment the *Hook* case stands for the proposition that the owner of an amusement park owes his patrons the duty of exercising

a high degree of care for their safety. I do not so read the *Hook* opinion. In my view this Court in that case stated that the duty owed by an owner or operator of an amusement park to his patrons is one of reasonable or ordinary care under all of the facts and circumstances of the case at hand, recognizing that where the particular activity is "extremely and intrinsically hazardous" reasonable care is a higher degree of care than would be required where the activity is not "extremely and intrinsically hazardous." In any event, I simply cannot perceive that the pulling of a stage coach around the premises of an amusement park is "extremely and intrinsically hazardous." Also, in the *Hook* case we declared that the "warranty of safe carriage, present in the carrier case, is absent where a plaintiff undertakes to ride on a device such as a Loop-O-Plane in an amusement park." In short, I submit that the *Hook* case controls the instant case and that the instruction given by the trial court was in accord with the pronouncement in that case.

Finally, though the majority opinion gives rather full treatment to the plaintiffs' theory of the case, not too much space is devoted to detailing the evidence adduced upon trial in behalf of the defendants. To supply this omission, I would note that the defendants' evidence tended to refute the contention that the stage was being carelessly or negligently driven by its well-seasoned driver and also that there was evidence tending to establish that the coach overturned because a metal clip or ring on the right singletree broke because of a "bubble" inside the ring or clip which could not be detected by any visual inspection thereof. Such being the state of the record, I do not believe that it was error to instruct on unavoidable accident. In any event plaintiffs do not contend that it was error to thus instruct.