**John Edward YOUNG and Patty Young, Petitioners,**

v.

**Holly CLARK, Respondent.**

**No. 90SC354.**

Supreme Court of Colorado, En Banc.

July 9, 1991.

Eldridge, Lindstrom & Hollo, P.C., Wade H. Eldridge, Barbara J. Lindstrom, Denver, for petitioners.

Quigley & Bruce, William C. Ritter, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the court of appeals unpublished decision, *Young v. Clark*, No. 89CA0421 (Colo. App. Mar. 22, 1990). The issue to be resolved is whether the trial court's submission of a "sudden emergency" instruction in this automobile collision case was improper. The court of appeals held that the trial court did not err by so instructing the jury. We affirm.

I.

This case arose from a rear-end collision on February 6, 1987, at approximately 10:30 a.m. The plaintiff, John Young (Young), and the defendant, Holly Clark (Clark), were both travelling eastbound in the center lane on Colorado Highway 36. Construction on the highway caused all traffic to slow to an estimated thirty-five to forty-five miles per hour. One unidentified driver, who was four to five cars ahead of Young, pulled out of the center lane into the right-hand lane and then swerved abruptly back into the center-lane traffic, forcing all drivers behind him to apply their brakes. At that time, Clark had looked over her shoulder while attempting to change lanes. Her passenger, Susan Baldwin, yelled to Clark upon seeing that all traffic ahead had stopped. Clark applied her brakes and swerved to the left, but was unable to avoid colliding with the rear of Young's car.

Young filed suit against Clark on June 11, 1987, claiming that he sustained personal injuries as a result of the accident that was caused by Clark's negligent operation of her car. Young's complaint was later amended to add a loss of consortium claim on behalf of Young's wife. Clark denied that she was negligent and designated the unidentified driver as a nonparty, claiming that he was responsible for causing the accident.

The trial court submitted the issues of Clark's negligence, John Young's contributory negligence, and the negligence of the designated nonparty to the jury. Included in the court's instructions to the jury was an explanation of the "sudden emergency" doctrine. The trial court submitted this instruction over the objection of the Youngs' attorney based on its finding that the sudden emergency doctrine remained valid under Colorado law and that the instruction served both parties "because both were confronted with the same sudden emergency."

The jury found that the Youngs' injuries were not caused by any negligence on Clark's part, and consequently never determined whether John Young was negligent or whether the nonparty driver was negligent. The court of appeals held that the trial court did not err by instructing the jury on the sudden emergency doctrine. We granted certiorari to determine whether the trial court's submission of a "sudden emergency" instruction was improper, either under the circumstances of this particular case, or because the instruction should no longer be given.

## II.

The sudden emergency doctrine was developed by the courts to recognize that a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal conditions. See W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 33, at 196 (5th ed.1984) [hereinafter *Prosser and Keeton*].

[T]he basis of the special rule is merely that the actor is left no time for adequate thought, or is reasonably so disturbed or excited that the actor cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same accuracy of judgment or conduct as one who has had full opportunity to reflect, even though it later appears that the actor made the wrong decision, one which no reasonable person could possibly have made after due deliberation.

*Id.* The doctrine does not, however, impose a lesser standard of care on a person caught in an emergency situation; the individual is still expected to respond to the situation as a reasonably prudent person under the circumstances. The emergency is merely a circumstance to be considered in determining whether the actor's conduct was reasonable. *Id.* at 196–97. *See also Restatement (Second) of Torts* § 296(1) comment b (1977) ("Among the circumstances which must be taken into account is the fact that the actor is confronted with [a sudden] emergency...."). Thus, a person may be found negligent if his actions are deemed unreasonable, despite the emergency. *Prosser and Keeton* § 33, at 197. The sudden emergency doctrine is available in a number of emergency situations and is used by both plaintiffs and defendants to counter charges of contributory and primary negligence. It is most commonly applied in the context of claims arising from motor vehicle accidents, as in the present case.

## A.

In this automobile collision case, the trial court submitted to the jury Colorado's pattern "sudden emergency" instruction, CJI–Civ.2d 9:10, which states: "A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances." The Youngs first contend that

the trial court erred by giving this instruction under the circumstances of this case because, they argue, the sudden emergency confronting Clark arose from a common, and thus foreseeable, traffic problem, and because Clark's own negligence caused the emergency situation.[1]

This court has approved of giving an instruction on the sudden emergency doctrine where sufficient evidence exists that a party acted in an emergency situation not caused by the party's own negligence. *See Davis v. Cline*, 177 Colo. 204, 493 P.2d 362 (1972); *Cudney v. Moore*, 163 Colo. 30, 428 P.2d 81 (1967); *Daigle v. Prather*, 152 Colo. 115, 380 P.2d 670 (1963); *Stewart v. Stout*, 143 Colo. 70, 351 P.2d 847 (1960); *Ridley v. Young*, 127 Colo. 46, 253 P.2d 433 (1953). In all of these cases, it was deemed appropriate to give a sudden emergency instruction in the context of an automobile collision.

In *Davis v. Cline*, 177 Colo. 204, 493 P.2d 362 (1972), an accident occurred when the defendant bus driver moved into the plaintiff's lane of traffic, forcing the plaintiff to steer sharply to the right to avoid colliding with the bus. The plaintiff subsequently struck a high curb and was thrown against the steering wheel, resulting in the aggravation of a previous back injury. This court held that the trial court committed prejudicial error by refusing to instruct the jury on the sudden emergency doctrine when there was competent evidence to justify giving the instruction. *Id.* at 210, 493 P.2d at 365. In so holding, the court noted that the sudden emergency doctrine "has long been recognized in Colorado as a valid principle" based on the rationale "that in an emergency there is no time for cool reflective deliberation during which alternative courses of action might be considered and explored; but rather, the situation demands [a] speedy decision based largely upon the actor's perception of the compelling circumstances." *Id.* at 207–08, 493 P.2d at 363–64. The court further viewed the doctrine "as an evidentiary guideline by which a trier of fact may properly apply the prudent [person] rule in evaluating the evidence of negligence being considered." *Id.* at 209, 493 P.2d at 364. Finally, the *Davis* court instructed that it was for the trier of fact to determine whether an emergency existed and, if so, whether the party's conduct was reasonable under the circumstances. *Id.* at 208, 493 P.2d at 364.

This court has also ruled it proper to give the sudden emergency instruction in automobile accidents involving a rear-end collision, as in the present case. In both *Daigle v. Prather*, 152 Colo. 115, 380 P.2d 670 (1963), and *Cudney v. Moore*, 163 Colo. 30, 428 P.2d 81 (1967), the evidence indicated that the defendants each experienced brake failure while attempting to stop their vehicles prior to hitting the rear-end of the plaintiffs' cars. In *Daigle*, the defendant testified that the suddenness of the brake failure prevented her from using her emergency brake or from veering to the left or right, and in *Cudney*, the defendant testified that "everything went so fast" that he was unable to reach his emergency brake in time and did not have room enough to swerve around the plaintiff's car. Under these circumstances, this court found that the defendants in both cases were entitled to a sudden emergency instruction. *Daigle*, 152 Colo. at 119, 380 P.2d at 672; *Cudney*, 163 Colo. at 32, 428 P.2d at 82. *See also Bartlett v. Bryant*, 166 Colo. 113, 115–16, 442 P.2d 425, 426–27 (1968); *Tracy v. Graf*, 37 Colo. App. 323, 327, 550 P.2d 886, 890 (1976), *rev'd on other grounds*, 194 Colo. 1, 568 P.2d 467 (1977) ("A sudden emergency instruction in a rear-end accident case is proper where, as here, there is evidence to support that theory of defense.").

■ C.R.C.P. 51.1(1) states: "In instructing the jury in a civil case, the court shall use such instructions as are contained in Colorado Jury Instruction (CJI) as are applicable to the evidence and the prevailing

---

1. We note that, from our review of the instructions tendered to the jury, no instruction was submitted advising that when a driver of a motor vehicle hits another vehicle in the rear the law presumes that the driver was negligent. *See* CJI–Civ.2d 11:12. We therefore do not address the effect such an instruction would have in the present case.

law." Moreover, "[a]n instruction should not be given to the jury unless there is evidence introduced to support that instruction." *Converse v. Zinke*, 635 P.2d 882, 889 (Colo.1981). We conclude that, by using the approved pattern instruction in CJI–Civ.2d 9:10 to advise the jury on the sudden emergency doctrine, the trial court properly followed the prevailing law of this state favoring the use of this instruction when, as here, sufficient evidence of an emergency is presented.

The Youngs contend that it was improper to give the instruction because the rear-end collision was caused by Clark's lack of attention and failure to maintain a safe distance from Young's car. While it is true that the sudden emergency instruction is not available where a defendant, or a plaintiff, is obviously guilty of negligence, the question of whether an emergency arose because of some negligence by Clark was not so clear. No evidence was presented to show that Clark was following too closely to Young's car or that she was driving too fast under the circumstances. In fact, John Young testified that he never saw how close Clark's car was to his or how fast she was driving just prior to the accident. Clark's passenger, Susan Baldwin, testified that Clark was not following Young's car too closely and that she was not speeding or "going faster than the regular flow of the traffic." The factual dispute as to whether Clark was at fault for causing the accident was therefore appropriately submitted to the finder of fact. Indeed, under CJI–Civ.2d 9:10, the jury's application of the sudden emergency doctrine is explicitly conditioned on a finding that the actor was not placed in a perilous predicament through any fault of his or her own.[2]

Further, it was Clark's theory that the negligence of the unknown driver caused the accident when the driver pulled out of the center lane of traffic and then abruptly reentered the lane several cars ahead of Young, precipitating the sudden stopping of all the cars behind the driver. Young conceded that he had to brake "hard" to avoid hitting the car in front of him and that the unknown driver probably shared some fault in causing the accident between Young and Clark. In our view, the sudden and unexpected reentry of the unknown driver into the flow of traffic provided sufficient evidence to support giving the sudden emergency instruction. *See Restatement (Second) of Torts* § 296(1) comment a (1977) (the sudden emergency doctrine applies "where the sudden emergency is created in any way other than by the actor's own tortious conduct, as where it is created by the unexpected operation of a natural force *or by the innocent or wrongful act of a third person* ") (emphasis added). We therefore conclude that the trial court did not act improperly in instructing the jury on the sudden emergency doctrine under the circumstances of this case.

**B.**

The Youngs further urge this court to follow the lead of those jurisdictions that have abolished, or curtailed the use of, the sudden emergency doctrine. *See Knapp v. Stanford*, 392 So.2d 196 (Miss.1980) (prospectively abolished the doctrine altogether in a 5–4 decision); *Simonson v. White*, 220 Mont. 14, 713 P.2d 983 (1986) (banned use of sudden emergency instruction in automobile cases); *DiCenzo v. Izawa*, 68 Haw. 528, 723 P.2d 171 (1986) (disapproving of sudden emergency instructions). These courts generally have denounced the usefulness of the sudden emergency instruction based upon a perceived "hazard" that the doctrine tends "to elevate its principles above what is required to be proven in a negligence action," reasoning that "[e]ven the wording of a well-drawn instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed 'sudden emergency.' " *Knapp*, 392 So.2d at 198. *See also Simonson*, 713 P.2d at 989 ("The instruction adds

---

**2.** The language of CJI–Civ.2d 9:10, "[a] person who, *through no fault of his or her own,* is placed in a sudden emergency" (emphasis added), calls upon the finder of fact to make the initial determination as to whether the emergency situation was created by the actor's own tortious conduct.

nothing to the law of negligence and serves only to leave an impression in the minds of the jurors that a driver is somehow excused from the ordinary standard of care because an emergency existed.").

Such reasoning, in our view, is based on unfounded assumptions about how jurors perceive an instruction explaining the relatively simplistic sudden emergency doctrine. The pattern instruction used by Colorado courts, CJI–Civ.2d 9:10, is a clear statement of the doctrine and obligates the finder of fact to do nothing more than apply the objective "reasonable person" standard to an actor in the specific context of an emergency situation. It thus does not operate to excuse fault but merely serves as an explanatory instruction, offered for purposes of clarification for the jury's benefit.[3]

The Youngs also maintain that the sudden emergency doctrine should be abolished because its original purpose, to overcome the harsh effect of the former contributory negligence defense whereby a plaintiff's negligence acted as a complete bar to recovery, is no longer served with the enactment of comparative negligence in this state. We find no merit in this argument, based on our conclusion that the sudden emergency doctrine is consistent with this state's comparative negligence scheme.

Colorado's comparative negligence statute, § 13–21–111, 6A C.R.S. (1987), was enacted in 1971 "to ameliorate the harshness of the complete bar resulting from common law contributory negligence." *Montgomery Elevator Co. v. Gordon*, 619 P.2d 66, 70 (Colo.1980). Under the statute, a plaintiff's contributory negligence shall not bar recovery if such negligence was not as great as the defendant's negligence, "but any damages allowed shall be diminished in proportion to the amount of negligence attributable to" the plaintiff. § 13–21–111(1). Hence, section 13–21–111 sets forth a method for apportioning dam-

ages in accordance with the amount of negligence attributable to each party. Consistent with this apportionment scheme, "[t]he sudden emergency instruction informs the jury ... how it is to allocate fault and apportion damages when the conduct of the person in question is that of an 'ordinarily prudent person' when faced with an emergency situation." *Compton v. Pletch*, 561 N.E.2d 803, 807 (Ind.App. 1990). Significantly, the doctrine explains to the jury the standard of conduct expected of defendants *and* plaintiffs who act under the stress of an emergency situation. Finding no friction between the comparative negligence scheme of allocating fault and the sudden emergency doctrine, we conclude that abolishing the doctrine on this ground is unwarranted. *Accord Compton*, 561 N.E.2d at 807 ("[U]nder either a contributory negligence or comparative fault system, the sudden emergency doctrine is a vital tool to explain to a jury the standard of conduct to determine 'fault' in an emergency."). *Contra Knapp v. Stanford*, 392 So.2d 196, 198 (Miss.1981) (the sudden emergency doctrine confuses the principle of comparative negligence); *Eslinger v. Ringsby Truck Lines*, 195 Mont. 292, 302, 636 P.2d 254, 260 (1981) ("in view of this jurisdiction's adoption of the doctrine of comparative negligence," instruction should not be given in "ordinary automobile accident case").

Lastly, the Youngs argue that the usefulness of the sudden emergency doctrine was abrogated with the enactment of section 13–21–111.5, 6A C.R.S. (1987), which permits the finder of fact to "consider the degree or percentage of negligence or fault of a person not a party to the action, based upon evidence thereof, which shall be admissible, in determining the degree or percentage of negligence or fault of those persons who are parties to such action." § 13–21–111.5(3)(a). We fail to see the logic in this argument. The sudden emergency instruction provides that a person "is

---

**3.** Other explanatory instructions pertaining to negligence appear in CJI–Civ.2d 9:12 and 9:13. CJI–Civ.2d 9:12 instructs: "The occurrence of an accident does not raise any presumption of negligence on the part of either the plaintiff or the

defendant." CJI–Civ.2d 9:13 advises: "To look in such a manner as to fail to see what must have been plainly visible is to look without a reasonable degree of care and is of no more effect than not to have looked at all."

not chargeable with negligence" if the person acts as a "reasonably careful person" under the given emergency situation, not of the person's own making. Section 13–21–111.5(3) allows for the consideration of a nonparty's negligence or fault. Thus, the designation of the unidentified driver in the present case enabled Clark to present evidence in support of her theory that she was not at fault for creating the emergency situation. We therefore conclude that the sudden emergency doctrine is compatible with the designation of nonparties provision in section 13–21–111.5(3).

The sudden emergency doctrine is a long-established principle of law in this jurisdiction. We choose to leave the doctrine intact, and continue to uphold the propriety of giving the sudden emergency instruction where competent evidence is presented that a party was confronted with a sudden or unexpected occurrence not of the party's own making.[4] We affirm the court of appeals judgment.

LOHR, J., dissents, and ERICKSON, J., joins in the dissent.

Justice LOHR dissenting:

I conclude that the court's instruction to the jury on sudden emergency was erroneous and prejudicial as applied to the facts of this case. Furthermore, I would disapprove of the use of this instruction for the future because it is unnecessary, confusing, and places undue emphasis on only a portion of the relevant facts in a negligence action. Accordingly, I respectfully dissent.

I recognize that we have approved the use of sudden emergency instructions on many occasions in the past. *See, e.g., Davis v. Cline,* 177 Colo. 204, 493 P.2d 362 (1972); *Bartlett v. Bryant,* 166 Colo. 113, 442 P.2d 425 (1968) (brake failure); *Daigle*

*v. Prather,* 152 Colo. 115, 380 P.2d 670 (1963) (brake failure); *Stewart v. Stout,* 143 Colo. 70, 351 P.2d 847 (1960) (icy patch on road); *Ridley v. Young,* 127 Colo. 46, 253 P.2d 433 (1953) (tire exploded). In recent times, however, some courts have determined that such an instruction has little utility but significant potential for prejudice and have withdrawn their approval of such instructions. I believe that a fresh consideration of special emergency instructions in the context of the present case demonstrates the wisdom of the course chosen by those courts that have discontinued or severely limited the use of such instructions.

Properly understood, the sudden emergency instruction describes the reasonably careful person standard which governs negligence actions. The Colorado sudden emergency pattern jury instruction, which was given in this case, explains: "A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances." CJI–Civ.2d 9:10. Emergency circumstances are merely one of several factors to consider in determining whether a person acted with the degree of care that would have been exercised by a reasonably careful person. *See* W. Keeton, W. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 33 at 196–97 (5th ed.1984) (hereinafter *Prosser*). The sudden emergency doctrine is simply a specific application of the reasonably careful person standard.

This instruction provides little guidance beyond that offered by other standard jury instructions. The instructions on both negligence, CJI–Civ.2d 9:4, and reasonable

---

**4.** Contrary to the Youngs' argument, we do not find *Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 396 P.2d 933 (1964), to be persuasive authority for abolishing the sudden emergency doctrine in this state. The *Lewis* court prospectively banned the trial courts from giving an instruction on unavoidable accident. This ruling has no bearing whatsoever on the viability of Colorado's sudden emergency instruction. An unavoidable accident is an accident that occurs

without anyone's fault. *Lewis,* 156 Colo. at 62, 396 P.2d at 941. The unavoidable accident instruction was banned because it essentially told the jury to find for the defendant. A sudden emergency instruction, on the other hand, does not force a particular conclusion on the jury; rather, it merely informs the jury that an emergency is a circumstance for it to consider in ascertaining whether an actor's conduct was reasonable.

care, CJI–Civ.2d 9:6, each of which was given in this case, also direct the jury to compare the party's conduct against that of a reasonably careful person acting under the same or similar circumstances. The general negligence and reasonable care instructions provide sufficient guidance for the jury to apply the reasonably careful person standard. Furthermore, counsel, in closing argument, can discuss the standard and explain the application of that standard under the evidence presented in a particular case. The sudden emergency instruction merely restates the reasonably careful person standard. The instruction, therefore, has minimal utility.

Several states have reconsidered the sudden emergency instruction and have abolished or severely restricted its use. In *Knapp v. Stanford*, 392 So.2d 196 (Miss. 1980), the Mississippi Supreme Court prospectively abolished the sudden emergency doctrine. The court recognized the doctrine's "tendency to elevate its principles above what is required to be proven in a negligence action." *Id.* at 198. Although the same standard of care applies in all negligence actions, "[e]ven the wording of a well-drawn [sudden emergency] instruction intimates that ordinary rules of negligence do not apply to the circumstances constituting the claimed 'sudden emergency.'" *Id.* Applying uniform principles of negligence under all circumstances would be the best procedure. *Id.* at 199. In *Simonson v. White*, 713 P.2d 983 (Mont. 1986), the Montana Supreme Court banned the sudden emergency instruction in all automobile accident cases. The instruction adds nothing to standard negligence law but leaves the impression that an emergency excuses the duty of ordinary care. *Id.* at 989. Similarly, the Hawaii Supreme Court discourages the use of the sudden emergency instruction. *DiCenzo v. Izawa*, 723 P.2d 171, 181 (Haw.1986). I agree that

the prejudice and confusion engendered by the instruction outweigh its utility.

A serious flaw in the instruction is its failure to apprise the jury that it must resolve certain factual prerequisites before applying the sudden emergency doctrine. In the present case, the evidence creates issues about the existence of an emergency and whether Clark was at fault in creating it.

The accident occurred on a stretch of Highway 36 on which construction was being performed. Clark observed a truck with lighted arrows indicating that traffic was to merge right. The alleged emergency was an unidentified car merging into traffic, a potential hazard that Clark was warned about. Arguably, drivers exercising ordinary care should anticipate that such traffic conditions are likely to arise.[1] *See Prosser* § 33 at 197. The Youngs also argued that Clark's inattentiveness to traffic conditions caused her to collide with the Youngs. Clark turned her head—to look at the construction and then to see if she could merge right—for an indefinite time before looking ahead to see the unidentified car merging. A jury could have determined that Clark was at fault in engendering the alleged emergency, which would have prevented her from invoking the sudden emergency doctrine. *See* CJI–Civ.2d 9:10; *Restatement (Second) of Torts* § 296(2) (1977). The jury was required to decide these questions of fact concerning the existence of an emergency and whether Clark was at fault in causing it before the sudden emergency doctrine could be applied. Whether an emergency actually existed is a question of fact for the jury to decide. *Davis*, 177 Colo. at 208, 493 P.2d at 364.

The jurors, however, were not instructed that they must decide the existence of an emergency and Clark's responsibility for

---

**1.** For this reason, some courts have held it error to instruct on the sudden emergency doctrine in ordinary automobile accident cases, *see Simonson v. White*, 713 P.2d 983, 989 (Mont.1986) (banning sudden emergency instruction in automobile accident cases), or because the specific traffic hazard should have been anticipated, *see Chodorov v. Eley*, 239 Va. 528, 391 S.E.2d 68, 70 (1990) (sudden stops in traffic do not warrant sudden emergency instruction) (citing *Garnot v. Johnson*, 239 Va. 81, 387 S.E.2d 473, 476 (1990)). *See also Paiva v. Pfeiffer*, 229 N.J.Super. 276, 551 A.2d 201, 204–05 (App.Div.1988) (instruction in error, apparently as applied, because argumentative and serving to emphasize unduly one aspect of the proofs).

creating the emergency. The majority contends that the sudden emergency instruction is explicitly conditioned on a finding that the actor was placed in a perilous predicament through no fault of her own. Maj. op. at 367. The existence of an emergency and Clark's responsibility for it, however, are not posed as factual prerequisites for jury determination. Rather, reference to those matters in the sudden emergency instruction appears to explain to the jurors why they must consider the emergency circumstances when evaluating Clark's conduct. The sudden emergency instruction abstractly discusses the standard of care applicable to emergency circumstances. The instruction can be easily interpreted as an instruction by the court that an emergency existed, that Clark was without fault in creating it, and that a special standard of care for that situation is to be applied. The jurors, believing that they have heard the court instruct that an emergency existed and that Clark was without fault in its creation, may therefore apply the doctrine even though they did not address its factual prerequisites as the law requires. I conclude that this acute potential for misinterpretation, coupled with the absence of an instruction that the jury must determine whether an emergency existed and whether Clark was at fault for creating it, caused prejudicial error.

The instruction's redundant recital of the reasonably careful person standard, while adding little to the jury's understanding of that standard, creates potential confusion. As the third reference to the importance of the circumstances—supplementing the instructions on negligence and reasonable care—the instruction overly emphasizes this aspect of the case. "[I]t is error to give two instructions, virtually the same, which would tend to confuse the jury by overly emphasizing a defense." *Pizza v. Wolf Creek Ski Development Corp.*, 711 P.2d 671, 680 (Colo.1985) (part of negligence per se instruction overly emphasized the statutory presumption of negligence

when court had already instructed on that presumption); *Norden v. Henry,* 167 Colo. 274, 279, 447 P.2d 212, 214 (1968) (two assumption of risk instructions overly emphasized that defense). As we said in a similar context, the instruction "serves only to twice tell the jury that the plaintiff cannot recover unless he proves negligence." *Lewis v. Buckskin Joe's, Inc.,* 156 Colo. 46, 61, 396 P.2d 933, 941 (1964) (abolishing the unavoidable accident instruction).

The instruction also implies that a sudden emergency invokes a different standard of care. A separate instruction [2] for sudden emergencies suggests to the jury that sudden emergencies give rise to different standards of conduct; otherwise there would be no need for a separate instruction. The instruction can readily be understood by jurors to connote that a sudden emergency excuses ordinary negligence instead of simply being one of the circumstances to be considered in determining whether the person confronted with an emergency acted as a reasonably careful person would. *See DiCenzo v. Izawa,* 723 P.2d 171, 181 (Haw.1986) ("wiser course of action would be to withhold sudden emergency instructions"); *Knapp v. Stanford,* 392 So.2d 196, 198 (Miss.1980) (abolishing sudden emergency instruction prospectively); *Simonson v. White,* 713 P.2d 983, 989 (Mont.1986) (abolishing sudden emergency instruction for automobile accidents). The instruction is fairly susceptible to misinterpretation.

Moreover, the emphasis on the emergency tends to focus the jury on the party's conduct during and after the emergency rather than examining the conduct before, during and after the emergency. "[W]here there is definite evidence of negligence on the part of the defendant, the weight of such evidence might be entirely destroyed by an instruction on sudden emergency. Such an instruction might well cause the jury to lose sight of the negligence which

---

**2.** The existence of a separate instruction on sudden emergency results from the sudden emergency doctrine's origin as an escape from the contributory negligence bar. *See* Note, *Torts—* *Negligence—The Sudden Emergency Doctrine is Abolished in Mississippi* 51 Miss. L.J. 301, 302–03 (1980); *see, e.g., Davis v. Cline,* 177 Colo. 204, 493 P.2d 362 (1972).

caused the emergency." *Kline v. Emmele,* 204 Kan. 629, 465 P.2d 970, 973 (1970) (quoted in *Mesecher v. Cropp,* 213 Kan. 695, 518 P.2d 504, 511 (1974)) (approving trial court's refusal to give sudden emergency instruction). In the present case, the jury's attention is channeled to focus on Clark's actions after the unidentified car attempted to merge back into traffic and to ignore the evidence that Clark may have been inattentive or otherwise negligent before the alleged emergency arose. Yet, the entirety of Clark's conduct, before, during, and after the unidentified car merged into traffic must be considered in determining whether Clark was negligent.

These problems illustrate the serious danger of misapplication of the sudden emergency instruction. The instruction has only marginal utility but creates serious risk of misapplication and confusion. The instruction does not inform the jurors that they must decide whether an emergency exists and the party's role in causing it. In addition, the instruction suggests a different standard for emergency situations and gives undue prominence to the emergency circumstances. These problems have led other state courts to abolish or severely restrict the use of the instruction. *See, e.g., Knapp,* 392 So.2d at 196; *see also Prosser* § 33 at 197 & n. 40 (model jury instructions in Illinois, Florida, Kansas, and Missouri recommend against the instruction). Rather than leave the matter for the trial court's discretion to permit use of the instruction in those circumstances where it might have some limited value, I would abolish it.[3]

If I were persuaded that the instruction did not prejudice the plaintiff, I would concur in the majority's judgment but express the view that the instruction should be disapproved for future use. The difficult factual issues concerning whether an emergency existed and if so whether it came about through no fault of Clark, coupled with the absence of an instruction that these issues are to be determined by the

jury and the implication instead that the court had already resolved them, convince me that the instruction was highly prejudicial. Accordingly, I dissent and would remand the case for a new trial.

Justice ERICKSON joins in this dissent.

---

**3.** In *Knapp,* 392 So.2d at 198, the Mississippi Supreme Court observed that during the prior twenty-five years it had considered approximately twenty-seven cases involving the sudden emergency instruction and had reversed twenty because the instruction was erroneous in its language or application.