Donald C. HESSE, II, Petitioner

v.

Colleen S. McCLINTIC, D.C., Respondent.

No. 06SC624.

Supreme Court of Colorado,
En Banc.

Jan. 14, 2008.

Rehearing Denied Feb. 4, 2008.*

* Justice Hobbs, Justice Bender and Justice Rice would grant the Petition.

Campbell Latiolais & Ruebel, P.C., Colin C. Campbell, Casey A. Quillen, Denver, Colorado, Attorneys for Petitioner.

Fogel Keating Wagner Polidori & Shafner, P.C., William L. Keating, Steven R. Polidori, Kristin D. Sanko, Denver, Colorado, Attorneys for Respondent.

Justice EID delivered the Opinion of the Court.

Respondent Colleen McClintic was rear-ended by Petitioner Donald Hesse when she slowed for bighorn sheep that had entered her lane of travel on the highway. McClintic brought a negligence claim against Hesse stemming from the accident. Hesse raised the defense of comparative negligence, claiming that McClintic was negligent in failing to pull onto the shoulder instead of slowing in the lane of travel. At the close of evidence, McClintic moved for a directed verdict on the issue of her comparative negligence, which the trial court denied. The jury found McClintic to be thirty percent at fault. The court of appeals reversed the trial court's denial of the directed verdict motion, holding that as a matter of law, McClintic had no duty to pull onto the shoulder when confronted by animals on the road. It further held that as a matter of law, McClintic was confronted with a "sudden emergency" and acted reasonably under the circumstances, thereby precluding a finding of breach of duty.

We now reverse the court of appeals. We hold that a driver is under a duty to drive with reasonable care, which may be violated in some circumstances by not pulling over. We further hold that Hesse presented sufficient evidence that McClintic acted unreasonably by failing to pull over when confronted by sheep on the road. Thus, we hold that the question of comparative negligence was properly submitted to the jury.

## I.

On the morning of February 12, 2001, a clear, sunny day, Petitioner Donald Hesse and Respondent Colleen McClintic were traveling in separate cars through the mountains on westbound I–70. At that location, the highway had a posted speed limit of sixty-five miles per hour and consisted of two travel lanes going in each direction, with paved shoulders on opposite sides of the grassy median and on the far sides of the highway. McClintic was driving in the right lane at a speed of sixty-five miles per hour when she saw a number of Rocky Mountain bighorn sheep ahead of her, with some standing in her lane of travel and some standing on the shoulder of the highway. She saw a semi-trailer truck on her left, but saw no cars behind the truck. She looked in her rearview mirror and did not see any vehicles behind her. She slowed her car in her lane of travel to a speed of between ten and thirty miles per hour.

Hesse was driving in the left lane behind the semi-trailer truck that was traveling next to McClintic. The truck slowed down, causing Hesse to decrease his speed as well and close the distance between his van and the truck to approximately twenty-five feet. Hesse's vision of the right lane ahead of him was partially obscured by the truck. Shortly thereafter, another vehicle came up closely behind Hesse, and its driver flashed his headlights, indicating a desire to pass. Hesse, seeing no one in the right lane, moved into that lane at a speed of fifty to fifty-five miles per hour. It was only then that he saw McClintic's car ahead of him. Hesse was unable to stop his van before he rear-ended McClintic's vehicle.

McClintic sued Hesse for damages resulting from her injuries sustained in the accident. She claimed that Hesse was negligent in following too closely behind the semi-trailer truck and thereby obscuring his vision of the right lane, making his lane change unsafe. As an affirmative defense, Hesse asserted that McClintic was comparatively negligent in slowing in the lane of travel rather than pulling onto the right shoulder when confronted with the sheep.

At trial, McClintic's expert witness, an accident reconstruction engineer, testified that at a speed of sixty-five miles per hour, McClintic could have seen the sheep from seven hundred to nine hundred feet away, and that she would have had about six to nine seconds to react to the sheep. McClintic testified that the sheep were "pretty far" away, perhaps three hundred feet, when she first saw them, and that she saw them in enough time to come to a stop before striking them, whether she stayed in her lane or moved onto the shoulder. She agreed that any time a motorist nearly stops on an interstate highway when other traffic is traveling at sixty-five miles per hour, there is a risk that another driver may come from behind

and hit the slower car. She further testified that in retrospect, it would have been safer for her to pull off the road, rather than remain on the highway. Lastly, she testified that just before the accident, she had her head turned to look at the sheep, rather than focusing on the traffic conditions around her.

At the close of evidence, McClintic moved for a directed verdict that Hesse was one hundred percent negligent, claiming that Hesse had introduced no evidence of McClintic's comparative negligence. The trial court denied the motion and submitted the issues of Hesse's negligence and McClintic's comparative negligence to the jury. The jury awarded McClintic $170,000, but found Hesse to be seventy percent at fault and McClintic to be thirty percent at fault. Accordingly, McClintic's award was reduced by thirty percent to $119,000.[1] McClintic filed a motion for judgment notwithstanding the verdict, which the trial court denied. McClintic then appealed the trial court's denial of her directed verdict motion to the court of appeals.

In *McClintic v. Hesse*, 151 P.3d 611 (Colo. App.2006), the court of appeals reversed, holding that the trial court erred in submitting the issues to the jury because, as a matter of law, Hesse was solely negligent. *Id.* at 613. It determined that as a matter of law, McClintic was under no duty to pull onto the shoulder when confronted with animals on the road. *Id.* at 613–14. It further found as a matter of law that the sheep created a "sudden emergency" and that McClintic exercised the same degree of care that a reasonable person would have exercised under the circumstances. *Id.* at 614. We granted certiorari in this case to review the court of appeals' ruling.[2]

## II.

Hesse contends that he presented enough evidence of McClintic's comparative negligence to reach the jury on the issue. We

---

1. *See* § 13–21–111(1), C.R.S. (2007) ("[A]ny damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.").

2. Specifically, we granted certiorari on the following issues: (1) whether the court of appeals

erred in holding the evidence could not support a theory of comparative negligence despite the jury's finding that Plaintiff was 30% liable for the subject accident, and (2) whether the court of appeals erred in determining that animals on a roadway create a sudden emergency exonerating the lead driver from fault as a matter of law.

agree, and reverse the court of appeals' holding to the contrary. First, we consider the court of appeals' conclusion that McClintic was under no duty to pull over to the side of the road. We hold that, contrary to the court of appeals' analysis, a driver is under a duty to drive with reasonable care, which may be violated in some circumstances by not pulling over. We then consider the court of appeals' conclusion that McClintic was not negligent, as a matter of law, because she acted reasonably when confronted by a sudden emergency by slowing on the highway. We hold that, again contrary to the court of appeals' analysis, Hesse presented sufficient evidence that McClintic acted unreasonably by failing to pull over when confronted by sheep on the road. Thus, we hold that the question of comparative negligence was properly submitted to the jury.

## A.

We begin our review with the question of whether McClintic owed a duty of care under the circumstances. *See HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 888 (Colo.2002) (stating that a negligence claim must fail unless a legal duty is owed). The existence and scope of a legal duty is a question of law. *See, e.g., Metro. Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313, 317 (Colo.1980).

The question of duty in this case is a relatively straightforward one. McClintic, like all drivers, was under a duty to drive with reasonable care under the circumstances. This is the duty that attaches to every driver when he or she goes on the road, and we have so held for almost half a century. *See, e.g., Curtis v. Lawley*, 140 Colo. 476, 480, 346 P.2d 579, 581 (1959) ("Notwithstanding the operator of a vehicle over a public road has the right of way over a person entering thereon from a private roadway, he must use his right in a reasonable manner; in other words, it was the duty of

both parties to use due care as that term is understood at common law."); *Bird v. Richardson*, 140 Colo. 310, 315, 344 P.2d 957, 960 (1959) (holding that the plaintiff was under a duty "to exercise that degree of care to avoid an accident required of a reasonable, prudent individual under the then existing circumstances").[3]

We reaffirmed this duty to drive with reasonable care under the circumstances most recently in the context of contributory negligence in *Ringsby Truck Lines, Inc. v. Bradfield*, 193 Colo. 151, 563 P.2d 939 (1977). In that case, a paving contractor closed two lanes of a four-lane highway for resurfacing and rerouted all traffic to the remaining two lanes, one going in each direction. *Id.* at 153, 563 P.2d at 941. Unaware that traffic had been re-routed, the driver of the Ringsby vehicle attempted to pass a gasoline tanker in front of him, crossing into the lane with oncoming traffic. *Id.* Bradfield, who was traveling in the oncoming traffic lane, slowed down and pulled off the road. *Id.* at 153–54, 563 P.2d at 941. Despite Bradfield's attempt to get out of the way, the Ringsby driver fish-tailed and struck him. *Id.* at 154, 563 P.2d at 941. Bradfield sued both Ringsby, the owner of the oncoming tractor-trailer which struck him, and Kiewit, the paving contractor.

We affirmed the trial court and court of appeals' ruling that Bradfield was not contributorily negligent as a matter of law for failing to get out of the way, stating:

[R]easonable minds would have to agree that Bradfield did all he was legally required to do in the dangerous situation which suddenly confronted him. His initial rate of speed was *not unreasonable under the circumstances.* He slowed his vehicle markedly and pulled almost entirely onto the shoulder of the highway. Bradfield was not required to drive his vehicle into the ditch. When a driver sees a vehicle approaching him in the wrong lane, he is

**3.** Both the plaintiff and the defendant are under a duty to drive with reasonable care, "for the commands of negligence are universal." Richard A. Epstein, *Torts* § 8.2.1 at 189 (1999). Commentators have stated that the duties take different forms depending upon whether the driver is a plaintiff or a defendant. Whereas negligence law imposes a duty on the defendant to not subject the plaintiff to an unreasonable risk of harm, comparative negligence imposes on the plaintiff who has been harmed a duty to the defendant to protect herself and minimize the harm she suffers. *See id.; accord* Dan B. Dobbs, *The Law of Torts* § 199 at 495 (2000).

entitled to assume that the other driver will return to his proper lane of traffic. *Id.* at 154, 563 P.2d at 942 (citation omitted) (emphasis added). Thus, in *Ringsby*, we confirmed a driver's duty of care to drive reasonably under the circumstances, but found that Bradfield was not contributorily negligent as a matter of law because he had acted reasonably under the circumstances and therefore did not breach his duty of care.[4]

Here, the court of appeals noted that there was "[no] authority suggesting that a driver has a duty to pull onto the shoulder when seeing animals on the roadway," and concluded that "[w]ithout such a duty, McClintic cannot be negligent as a matter of law for failing to pull over." *McClintic*, 151 P.3d at 614. The court of appeals is correct that there is no general requirement that a driver *always* pull over to the side of the road when confronted by animals on the road.[5] However, simply because a driver need not pull over *every* time she is confronted by animals on the road does not mean that she *never* needs to pull over in such a situation. The court of appeals erred in making this leap of logic.

As noted above, a driver is under a duty to act reasonably under the circumstances. Pulling to the shoulder will sometimes be the best decision under the circumstances, but other times, the safest course of action will be to stay on the road. There will be some circumstances in which the animals appear suddenly, and the driver has no time to react and pull over. In other situations, the animals could be farther in the distance, and the driver can slow and pull over in a safe fashion. There are undoubtedly hundreds, if not thousands, of variations on the "vehicle meets animals" fact pattern. As a result, we conclude that the court of appeals erred when it held that as a matter of law, there is no duty to pull over when confronted with animals on the road. Rather, a driver is under a duty to act reasonably under the circumstances—a duty that may be violated in some circumstances by not pulling over.[6]

**B.**

■ Because McClintic was under a duty to drive with reasonable care under the circumstances, the question becomes whether she breached that duty. The court of appeals held that there was no duty under the circumstances, but it nevertheless went on to reach the question of breach through the rubric of "sudden emergency." *McClintic*, 151 P.3d at 614. It held that as a matter of law, McClintic exercised the same degree of care that a reasonably prudent person would have exercised under the circumstances when confronted with the "sudden emergen-

---

**4.** We stated in *Ringsby* that "when an automobile driver, as a reasonable person, should foresee that his conduct will involve an unreasonable risk of harm to other drivers or to pedestrians, he is then under a duty to them.... There are, however, a good many defendants, and a good many situations, as to which there is no such duty." 193 Colo. at 156, 563 P.2d at 943 (citation and internal quotation marks omitted). This quote refers to our second holding in *Ringsby*— namely, that Kiewit (the paving contractor) had no claim of indemnity against his joint tortfeasor and co-defendant Ringsby because "Ringsby owed no [d]uty to protect Kiewit." *Id.* Our conclusion that Ringsby owed no duty to Kiewit did not affect, and should not be conflated with, our first holding in that case—that is, that Bradfield was under a duty to drive with reasonable care under the circumstances but did not breach that duty as a matter of law.

**5.** The relevant statutory provisions, sections 42–4–1103(1) and (3)(b), C.R.S. (2007), require a driver not to impede traffic by driving at a slow rate of speed unless circumstances dictate that

she drive at a slower speed; in other words, the provisions simply require drivers to drive reasonably under the circumstances. The court of appeals was therefore correct to reject Hesse's argument that McClintic's conduct constituted negligence per se because it violated a statute. *McClintic*, 151 P.3d at 614. However, the fact that no statute required McClintic to pull onto the shoulder when confronted with the sheep does not mean that her conduct was not negligent. Negligence per se, or violation of a statute or rule, is only one means of establishing that the individual owed a duty of care and breached that duty. *See Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 78 (Colo.1998); *accord City of Fountain v. Gast*, 904 P.2d 478, 480 (Colo.1995); *Yampa Valley Elec. Ass'n v. Telecky*, 862 P.2d 252, 257–58 (Colo.1993).

**6.** We find our decision in *Taco Bell, Inc. v. Lannon* to be inapposite to defining the duty owed in this case, as it involved the question of whether a landowner owed a special, affirmative duty to its patrons to protect them from the criminal acts of third parties. 744 P.2d 43, 46 (Colo.1987).

cy" of encountering sheep on the highway. *Id.* Thus, it found that the trial court erred in sending the question of breach to the jury. *Id.* at 615.

The "sudden emergency" doctrine recognizes that "a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal conditions." *Young v. Clark,* 814 P.2d 364, 365 (Colo.1991). The doctrine does not, however, automatically insulate drivers confronted with an emergency from comparative negligence claims. An emergency does not impose a lesser standard of care on the person caught in the situation; it is simply one circumstance to be considered in determining whether the individual responded as a reasonably prudent person would have under the circumstances. *Id.* Thus, a person may be found negligent if her actions are deemed unreasonable under the circumstances, even if those circumstances included an emergency. *Id.*

We have long held that whether there was an emergency and whether the course of conduct chosen under the circumstances was reasonable are questions of fact to be determined by the trier of fact. *See, e.g., Davis v. Cline,* 177 Colo. 204, 208, 493 P.2d 362, 364 (1972). This is in line with our broader rule that the question of whether a person was negligent—that is, whether she breached her duty of care by acting unreasonably under the circumstances—is ordinarily a question of fact for the jury. *Metro. Gas Repair Serv., Inc.,* 621 P.2d at 318. In a comparative negligence case, "[t]he relative degrees of fault are to be determined by a trier of fact except in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference." *Gordon v. Benson,* 925 P.2d 775, 777 (Colo. 1996). When considering a directed verdict motion, a court "must view the evidence and all reasonable inferences arising legitimately therefrom in the light most favorable to the non-movant." *Huntoon v. TCI Cablevision of Colo., Inc.,* 969 P.2d 681, 686 (Colo.1998). If, when viewed in this light, the evidence cannot support a verdict in favor of the non-moving party, the court should direct a ver-

dict and not submit the issue to the jury. *Id.* at 686–87. "[W]here there is *no evidence* in the record that could support a finding of negligence on the part of the plaintiff, it is reversible error to submit the question of comparative negligence to the jury." *Id.* at 687 (emphasis added). It was thus for the jury to determine whether the animals on the road constituted a "sudden emergency" and whether McClintic acted reasonably by slowing but not pulling over, unless there was "no evidence" that she was negligent.

We cannot conclude that there was "no evidence" of McClintic's negligence. McClintic was driving on a heavily traveled portion of I–70; indeed, there was a truck driving beside her at the time. In her testimony at trial, she agreed that any time a motorist nearly stops on an interstate highway when other traffic is traveling at sixty-five miles per hour, there is a risk that another driver may come from behind and hit the slower car.

Additionally, McClintic's own expert, an engineer who does accident reconstruction, testified that McClintic could have seen the sheep from seven hundred to nine hundred feet away, giving her six to nine seconds to react had she been traveling at a speed of sixty-five miles per hour. McClintic, on the other hand, testified that the sheep were three hundred feet away when she first saw them. The jury could have concluded from this testimony that McClintic's visibility was nine hundred feet, but that she was not paying adequate attention to the conditions ahead of her and therefore lost crucial time in which she could have changed lanes, pulled onto the shoulder, put on her hazard lights, or conducted any number of other defensive driving maneuvers that could have lowered the risk of an accident.

Moreover, McClintic testified that the sheep were "pretty far" away when she first saw them, and that she had enough time to come to a stop before hitting them—regardless of whether she had stayed in the lane of travel or moved onto the shoulder. She further testified that in retrospect, it would have been safer for her to pull off the road, rather than slow down on the highway. Lastly, she testified that just before the accident, she

had her head turned to look at the sheep. The jury could have concluded that even if McClintic saw the sheep from only three hundred feet away, she still had time to pull onto the shoulder and thereby minimize her risk of being hit from behind, while avoiding a collision with the sheep. The jury could have further determined that McClintic was watching the sheep and was not focused on the traffic conditions around her, thus eliminating the possibility of seeing Hesse's car and moving out of its way.

From all of this evidence, the jury could have concluded that McClintic had sufficient time to pull over to the shoulder, and that a prudent driver in the same circumstances would have done so. As a result, we find that Hesse presented sufficient evidence of McClintic's negligence to reach the jury on the issue of comparative negligence.

We do not mean to suggest that there are not cases in which the issue of comparative negligence is properly kept from the jury; it is simply that this is not one of them. Indeed, as illustrated by *Ringsby*, in which the plaintiff pulled off the side of the road but was hit anyway, we concluded that the driver "did all he was legally required to do," and that therefore the question of the reasonableness of the driver's conduct could be decided as a matter of law. 193 Colo. at 154–55, 563 P.2d at 942. It is not clear in this case, however, that McClintic did all she was required to do under the circumstances. We therefore hold that the trial court properly denied her directed verdict motion on the issue of comparative negligence.[7]

## III.

For the foregoing reasons, we reverse the court of appeals. We hold that a driver is under a duty to drive with reasonable care, which may be violated in some circumstances by not pulling over. We further hold that Hesse presented sufficient evidence that McClintic acted unreasonably by failing to

pull over when confronted by sheep on the road. Thus, we hold that the question of comparative negligence was properly submitted to the jury. We therefore reverse the court of appeals and remand for further proceedings consistent with this opinion.

Justice RICE dissents, and Justice HOBBS and Justice BENDER join in the dissent.

Justice RICE, dissenting.

I would affirm the court of appeals' ruling in this case that there was no duty on McClintic to pull over to the right shoulder when she slowed for bighorn sheep on the highway. Therefore, I respectfully dissent from the majority opinion.

## I. Defining the Legal Duty

In this case, the majority correctly recognizes that this court must begin its comparative negligence analysis by asking whether McClintic owed a duty to Hesse. Maj. op. at 762. However, I believe that the majority ignores precedent by assuming without explanation that if McClintic owed any duty to Hesse, that duty is an ordinary duty of care. Instead, I would analyze whether the duty at issue is a broad duty of care, or a more narrow duty to pull to the shoulder under the circumstances. Only after defining the scope of duty at issue would I determine whether McClintic owed that duty to Hesse.

In this case, I would hold that precedent requires us to define the duty more narrowly than the ordinary duty of care. In a long line of cases, Colorado courts have tailored the scope of the legal duty to the case at hand. For instance, in *Taco Bell, Inc. v. Lannon*, the plaintiff was shot by a robber on defendant Taco Bell's premises. 744 P.2d 43, 43 (Colo.1987). This court recognized that there was a general duty by a landowner to exercise reasonable and ordinary care to

---

7. We note that our conclusion is not changed by the "rear-end collision presumption," upon which the court of appeals relied to support its holding. *McClintic*, 151 P.3d at 613, 615. In a rear-end collision, the driver in the rear, in this case Hesse, is presumed to be negligent. *Iacino v. Brown*, 121 Colo. 450, 454, 217 P.2d 266, 268

(1950). However, the issue before us is not whether Hesse was negligent in causing the collision. Rather, we are concerned with whether Hesse presented enough evidence of McClintic's comparative negligence to reach the jury on the issue. Therefore, the rear-end collision presumption is simply not an issue in this case.

make the owner's premises safe. *Id.* at 46 (citing *Safeway Stores, Inc. v. Smith,* 658 P.2d 255 (Colo.1983)). Rather than apply that general duty of care, however, we looked to whether a more specific duty existed to take certain security measures to protect business patrons from injuries caused by the criminal acts of unknown third persons. *Id.* We determined that the more specific duty existed, and therefore the question of negligence was properly submitted to the jury. *Id.* at 51.

Similarly, this court has held that, encompassed within a manufacturer's duty to use reasonable care in the design and manufacture of its product, there is a duty to minimize the injurious effects of a foreseeable collision by employing commonsense safety features. *Camacho v. Honda Motor Co.,* 741 P.2d 1240, 1243–44 (Colo.1987) (applying the "crashworthiness doctrine" to motorcycle manufacturers). In addition, in some negligent supervision cases, we have limited the scope of ordinary care to a duty to take reasonable steps to prevent foreseeable harm of a known risk. *Keller v. Koca,* 111 P.3d 445, 449 (Colo.2005) (citing *Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988); *Fletcher v. Baltimore & P.R. Co.,* 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411 (1897)).

Last, I note that this court has rejected the uniform application of the ordinary duty of care in vehicle cases. *See Ringsby Truck Lines, Inc. v. Bradfield,* 193 Colo. 151, 156, 563 P.2d 939, 943 (1977) (stating that vehicle drivers do not owe a duty of care to every driver and pedestrian); *but see Curtis v. Lawley,* 140 Colo. 476, 480, 346 P.2d 579, 581 (1959) (applying general duty of care in vehicle collision case). If this court were to apply the general duty of care to all cases involving allegedly negligent vehicle drivers, courts would have to hold uniformly that the driver owed a duty of care to whomever he encountered, regardless of whether that encounter was foreseeable. This court has previously rejected this outcome. *See Ringsby,* 193 Colo. at 156, 563 P.2d at 943. In *Ringsby Truck Lines, Inc. v. Bradfield,* we quoted William Prosser as saying that when an automobile driver, as a reasonable person, should "foresee that his conduct will involve an un-

reasonable risk of harm to other drivers or to pedestrians, he is then under a duty to them.... There are, however, a good many defendants, and a good many situations, as to which there is no such duty." *Id.* (quoting W. Prosser, *Torts* § 53 at 326 (4th ed.1971)) (alteration in original).

Indeed, this court has previously applied a narrower duty of care in vehicle cases. *Ringsby* is similar to the case at hand. *Id.* at 151, 563 P.2d 939. In *Ringsby,* as here, the defendant and plaintiff were involved in a vehicle collision in which the defendant had acted negligently. *Id.* at 153–54, 563 P.2d at 941. The defendant drove in a lane that had been temporarily designated for oncoming traffic, and his negligence resulted in a collision with the plaintiff's oncoming vehicle. *Id.* In both *Ringsby* and the case at hand, the defendant argued that the jury should decide whether the plaintiff's negligence had contributed to the crash. *See id.* at 154, 563 P.2d at 941. The *Ringsby* defendant claimed that the plaintiff had been "insufficiently cautious" and thus was contributorily negligent. *Id.* The defendant therefore argued that the trial court erred in refusing to submit to the jury the question of the plaintiff's contributory negligence. *Id.* We disagreed, holding in *Ringsby* that the trial court did not err in withdrawing the contributory negligence issue from the jury. *Id.* at 155, 563 P.2d at 942.

Our determination in *Ringsby* that the jury should not decide the question of breach centered around a narrow concept of duty. We noted that the plaintiff "did all he was legally required to do" to avoid the collision. *Id.* at 154, 563 P.2d at 942. We also noted that the plaintiff "was not required to drive his vehicle into the ditch." *Id.* Essentially, we defined the duty that the plaintiff owed toward the defendant by looking to the particular circumstances of the case rather than by applying a uniform standard of ordinary care. The question of contributory negligence was properly withheld from the jury because the plaintiff did not owe a duty to the defendant under the circumstances.

Therefore, in keeping with the lessons of *Taco Bell* and *Ringsby,* I would find that the particular and unusual circumstances of this

case compel this court to tailor the scope of the legal duty, and to reject the application of a uniform standard of ordinary care. In *Taco Bell*, we looked to whether certain security measures were necessary by virtue of the restaurant's unusually violent immediate history. 744 P.2d at 44 (noting that ten armed robberies had taken place there in the past three years). Similarly, in *Ringsby*, we held that the scope of the duty of due care does not require a driver to drive his car into a ditch in an effort to avoid traffic when encountering atypical traffic conditions. 193 Colo. at 154, 563 P.2d at 942. In this case, I would similarly tailor the duty to the unusual circumstances in which the plaintiff found herself; here, the plaintiff encountered bighorn sheep ahead of her in her lane of the highway, she was unable to change lanes because of traffic to her left, and she determined that there was no traffic behind her.

Accordingly, I would determine that it would be inappropriate to analyze solely whether McClintic owed a duty to operate her vehicle with due care. Instead, I would ask whether, encompassed within that duty to act with due care, a driver has a duty to pull to the shoulder of the highway when she confronts animals on the road.[1]

## II. McClintic Did Not Owe Hesse a Duty to Pull to the Shoulder

Having determined the precise duty involved, I would next turn to the question of whether McClintic owed Hesse that duty. The question of whether a duty is owed is essentially one of fairness. *Taco Bell*, 744 P.2d at 46. In order to determine whether it would be fair to impose a duty on McClintic to pull to the shoulder, I would look to the duties imposed by Colorado statutes and by the factors enumerated in *Taco Bell*.

In this spirit, then, I would first look to the Colorado motor vehicle statutes. I would ask whether the state has imposed a duty on drivers who are confronted by adverse traffic conditions to pull to the side of the road. Our statute provides that "[n]o person shall

drive a motor vehicle on any highway at such a slow speed as to impede or block the normal and reasonable forward movement of traffic, except when a reduced speed is necessary for safe operation of such vehicle or in compliance with law." § 42–4–1103(1), C.R.S. (2007). In addition, our statute provides that:

> [I]f any person drives a motor vehicle ... at a speed less than the normal and reasonable speed of traffic under the conditions then and there existing and by so driving at such slower speed impedes or retards the normal and reasonable movement of vehicular traffic following immediately behind, then such driver shall ... [p]ull off the roadway at the first available place where such movement can safely and lawfully be made until such impeded traffic has passed by.

§ 42–4–1103(3)(b), C.R.S. (2007).

In this case, McClintic reduced her speed to avoid hitting the bighorn sheep. Reducing her speed in such a manner was necessary for the safe operation of her vehicle under section 42–4–1103(3)(b) and complied with her statutory duty. In addition, because there were no vehicles immediately behind her when she decelerated, McClintic did not "impede or retard the normal and reasonable movement of vehicular traffic following immediately behind" her, and thus she was under no statutory obligation "to pull off the roadway at the first available place" under subsection (3)(b). In short, McClintic, having slowed to a speed that was reasonable for the conditions in which she found herself, was under no statutory duty to pull to the side of the road. Thus, I agree with the court of appeals and the majority that the Colorado traffic laws imposed no duty on McClintic to pull to the side of the road rather than to decelerate. *See McClintic v. Hesse*, 151 P.3d 611, 614 (Colo.App.2006); maj. op. at 763, n. 5.

Next, I would look to the factors discussed in *Taco Bell* to assess whether McClintic owed a duty to Hesse to pull to the side of

---

1. We note that, during the trial, this is the duty that Hesse argued that McClintic owed: "If you're going to have to stop, the first thing you should do is pull off the road onto the shoulder, and especially if you're on a highway when people are coming up behind you at 60 to 65 miles an hour. It's the only prudent thing to do...."

the road. *See* 744 P.2d at 46. In Colorado, to determine whether a duty was owed, we balance the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden on the actor. *Id.* "No one factor is controlling, and the question of whether a duty should be imposed in a particular case is essentially one of fairness under contemporary standards—whether reasonable persons would recognize a duty and agree that it exists." *Id.*

First, by slowing down to avoid hitting the sheep, McClintic did not take an unreasonable risk. As the court of appeals noted, McClintic "saw a truck on her left side and sheep positioned ahead on the right shoulder, but no cars behind her. Thus, the only open space on the roadway was directly behind her." *Hesse,* 151 P.3d at 614. She had no reason to anticipate that another vehicle would suddenly come up behind her from the left lane. The risk involved in taking advantage of the road behind her was minimal. Second, the harm that occurred was neither foreseeable nor likely. It was not foreseeable that a car in the left lane would choose that moment to change lanes without first checking to be sure that the right lane was safe. Third, I concede that pulling over to the shoulder would not constitute a hefty burden on a driver. To pull to the shoulder would be inconvenient, but it could hardly be considered burdensome. Last, there could be significant consequences if this court were to impose a duty on drivers to pull to the shoulder upon encountering an obstruction.[2] Every situation in which a driver is confronted with animals on the road is unique. Pulling to the shoulder will sometimes be the best decision under the circumstances, but other times, the safest course of action will be to stay on the road. If we were to impose a duty to pull to the shoulder in this case, the precedential effect could place other drivers

in legal jeopardy for reasonably choosing to remain on the road under similar circumstances.

In sum, McClintic's actions did not create a great risk of harm, it was not foreseeable that a collision would result when she cautiously slowed for the sheep rather than pulling to the shoulder, and there may be significant consequences of imposing a duty to pull to the side of the road. Thus, I would hold that these factors establish that it would be unfair to impose on McClintic a duty to pull to the side of the road.

Based on my analysis of Colorado statutes and the *Taco Bell* factors, I would hold as a matter of law that the duty of due care imposed on all drivers does not encompass the duty to pull to the shoulder when confronted with animals on the road. Because McClintic did not, as a matter of law, violate any duty she owed to Hesse, I would hold that the court of appeals did not err in holding that the evidence could not support a theory of comparative negligence against her.

### III. Conclusion

I would hold that McClintic was under no duty to pull to the shoulder when she encountered animals on the road. Therefore, I would affirm the decision of the court of appeals.

I am authorized to say that Justice HOBBS and Justice BENDER join in this dissent.

---

2. In discussing the consequences of imposing a duty, we must consider the precedential effect of our decision. *Lannon v. Taco Bell, Inc.,* 708 P.2d 1370, 1375 (Colo.App.1985) (Smith, J., concurring in part and dissenting in part), *aff'd,* 744 P.2d 43 ("[T]he court *must* consider the consequences and effect that imposing such specific means of fulfilling the duty would have upon society and the individual involved. These considerations cannot, because of our system of precedential law, be limited solely to the case at bar; rather, they are policy decisions with far reaching implications.").